## WALDRON *v.* WALDRON.

(*Circuit Court, N. D. Illinois.* February 17, 1890.)

1. HUSBAND AND WIFE—ACTION FOR ALIENATION OF AFFECTION.
   In an action by a wife against another woman for alienating her husband's affections, and causing him to abandon her, plaintiff cannot recover unless it appears by a preponderance of evidence that the alienation of affection and abandonment was caused by defendant knowingly, and by direct and active interference.

2. SAME—PREVIOUS DIVORCE—EVIDENCE.
   In such action, the complaint and evidence, in a suit for divorce previously obtained by plaintiff against her husband, are inadmissible.

3. SAME—DAMAGES.
   The measure of damages in such action is based on the actual injury to plaintiff by the loss of her husband's affection and support, and on the pecuniary circumstances of defendant; and, if the injury was inflicted wantonly and maliciously, exemplary damages may be awarded.

At Law.
*Chas. H. Aldrich* and *Wirt Dexter*, for plaintiff.
*Edwin Walker* and *A. & C. B. McCoy*, for defendant.

BUNN, J., (*charging jury*.) This action is brought by the plaintiff, Mary Waldron, a citizen of the state of Indiana, residing at La Fayette, in said state, against Josephine P. Waldron, a citizen of Illinois, residing at Chicago, to recover damages for the alleged wrongful act of the defendant in alienating the affections of the plaintiff's husband, Edward H. Waldron, from the plaintiff, and depriving her of the comfort, fellowship, society, and assistance of her said husband. There are in the plaintiff's declaration two distinct statements of the charge which the plaintiff makes and relies upon as a cause of action against the defendant. The first is:

"For that whereas, the said defendant, contriving and wrongfully, wickedly and unjustly, intending to injure the said plaintiff, and to deprive her of the comfort, fellowship, society, aid, and assistance of Edward H. Waldron, the then husband of the said plaintiff, and to alienate and destroy his affection for the said plaintiff, on, to-wit, the 6th day of June, 1886, and on divers other days and times between the said 6th day of June, 1886, and the 21st day of June, 1887, wrongly, wickedly, and unjustly debauched and carnally knew the said Edward H. Waldron, then and there still being the husband of the plaintiff, and thereby the affection of the said Edward H. Waldron for the said plaintiff was then and there alienated and destroyed; and also by reason of the premises the said plaintiff from thence hitherto wholly lost and was deprived of the comfort, fellowship, society, and assistance of the said Edward H. Waldron, her said husband, in her domestic affairs, which the said plaintiff during all that time ought to have had, and otherwise might and would have had."

The second statement of the plaintiff's cause of action is:

"That whereas, the said defendant, contriving and wrongfully, wickedly and injuriously, intending to injure the said plaintiff, and to deprive her of the comfort, fellowship, society, aid, and assistance of Edward H. Waldron, the then husband of the plaintiff, and to alienate and destroy his affection for the said plaintiff, on the 6th day of June, 1886, and on divers other days and times between said 6th day of June, 1886, and the 21st day of June, 1887, wrongfully and unjustly sought and made the acquaintance of Edward H. Waldron, the husband of the plaintiff, and, then and there well knowing that said Edward H. Waldron was the husband of said plaintiff, wrongfully, wickedly, and unjustly besought, persuaded, and allured the said Edward H. Waldron to desert and abandon the said plaintiff, and thereby the affections of Edward H. Waldron for the plaintiff were alienated and destroyed; and also by reason of the premises the plaintiff has from thence hitherto been wholly deprived of the affection, society, and assistance of her said husband in her domestic affairs, which the plaintiff during all that time ought to have had, and otherwise might and would have had; and also, by reason of the premises, the said plaintiff, during all said time from thence hitherto, suffered great mental anguish and loss of social reputation."

These are the two special statements of the plaintiff's cause of action against the defendant. You will notice that the substance of the first is that the defendant, intending to injure the plaintiff, debauched and carnally knew the plaintiff's husband, and thereby the affection of the hus-

band for his wife was alienated and destroyed, and the plaintiff deprived of his affection, comfort, society, and fellowship. The substance of the second charge is that the defendant, wrongfully intending to injure the plaintiff, and to alienate and destroy his affection for the plaintiff, wrongfully and unjustly sought and made the acquaintance of the plaintiff's husband, and wrongfully, wickedly, and unjustly besought, persuaded, and enticed the said Waldron to desert and abandon the plaintiff, and thereby alienated and destroyed his affection for the plaintiff. These are two several and distinct statements of the same cause of action, intended to meet the proofs as they should appear on the trial. The substance and material part of each is the same, to-wit, that the defendant wrongfully and intentionally, either by debauching and carnally knowing the plaintiff's husband, or by beseeching, persuading, or alluring him to desert and abandon the plaintiff, deprived the plaintiff of his affection, society, and fellowship. There is no doubt, upon proper and sufficient proof, such action may be maintained, and the burden of the jury's duty will be to determine whether the charges, or either of them, in the declaration made, has been proven to your satisfaction by the evidence.

A man may maintain an action against another man for intentionally and wrongfully alienating the affections of his wife, or for enticing or alluring her to leave her husband. A woman may also maintain an action against another woman for wrongfully or intentionally destroying the affection of her husband, or persuading, enticing, or alluring him to desert or abandon her. The relation of marriage is a sacred and important relation. It is the foundation of family life and social happiness, and the family is, in an important sense, the foundation of the state in free and enlightened countries. This relationship is jealously guarded by the law, and should be revered by all good citizens. There is no greater injury, socially speaking, which one person can do to another, than to wantonly interfere with and break up the marital life of husband and wife. For such an injury to the rights of the individual the law gives a right of action on the case for damages against the wrongdoer in favor of the party injured. Such a charge, however, is one easily made, and, as it effects the person, the property, and the character of the person charged with the wrong, it should be proved by testimony convincing and satisfactory to the minds and consciences of the jury. The burden of proof is always upon the person making such a charge, and the charge should not be assumed to be true without evidence, or without a preponderance of evidence, to support it. The evidence adduced may be circumstantial in character, and usually is, in such cases; but it should be sufficent and satisfactory to induce the jury the believe the charges to be true.

The court will not undertake to discuss the evidence at length before you. It is very voluminous, though confined to but few material points, and it has been very fully and elaborately discussed by counsel. The court will content itself by calling your attention, as it has, to the one material issue in the case, to a statement of some of the leading facts that are either undisputed or clearly proven by the testimony, and **to**

the tendency and bearing of the evidence upon either side. It will be well for the jury to have these undisputed facts and their dates well fixed in your minds in order to understand and weigh to the best advantage the other evidence, and so determine the bearing of all upon the one main issue in the case.

The plaintiff, Mary Waldron, then Mary Beaucamp, was married to Edward H. Waldron on September 17, 1865, at Syracuse, N. Y., while there on a temporary visit. They had before that time both resided at La Fayette, in the state of Indiana, he boarding in her mother's family. Upon their marriage they returned to La Fayette, and resided there, and lived together as husband and wife, for some 20 years or more, excepting that during about two years of that time they lived at St. Louis. They had one child by the marriage, Winfield Willard Waldron, born on the 11th day of May, 1869, a young man now 21 years old, and a witness for the plaintiff on this trial. The plaintiff says she was born in 1833. Before her marriage to Waldron she had been previously married to William Beaucamp, about 1857 or 1858, when she was 24 or 25 years old. This marriage seems to have been an unhappy one. The plaintiff admits that she had a child some two months after the marriage, whom they named Edward Beaucamp. This son grew up to be a young man, and seems to have been the cause of some contention and trouble between the plaintiff and her husband, with whom he lived after her marriage to Waldron. He was profligate and shiftless, was convicted of crime, sentenced for a term of years to the state-prison, and afterwards died. At the time the plaintiff married Mr. Waldron, in 1865, she was about 32 years old, and Waldron 21. Previous to the marriage, and about the year 1860, some three years after the marriage to Beaucamp, she obtained a divorce from Beaucamp on the ground of desertion and failure to support; she all the time residing at La Fayette, Ind. The defendant was married to E. S. Alexander, September 23, 1857. They lived together as husband and wife until his death, on February 23, 1886. Waldron and Alexander were both railroad men, and friends, and the two families visited back and forth occasionally for many years previous to the death of Alexander. In June, 1886, Waldron left the plaintiff, and came to Chicago, and never lived with her after. He has since that time resided in Chicago. On June 20, 1887, the plaintiff filed a bill for a divorce in Tippecanoe county court, Ind., against her husband, E. H. Waldron. His appearance in the case was immediately entered, and on June 21st a decree of divorce was rendered dissolving the marriage contract relation between them absolutely. The effect of that decree was to free both of the parties from the obligation of the previously existing marriage relations between them, and to leave each of the parties free to contract marriage with other persons. In the fall of 1887, on October 25th, the defendant was married to E. H. Waldron, and since that time they have lived together in Chicago as husband and wife.

These are some of the leading undisputed facts in the case, and to be considered by the jury in connection with all the other evidence in the

case in determining the question here,—the main issue as to whether the defendant is guilty of the charges contained in the plaintiff's declaration. It will be noticed and borne in mind by the jury that the charges made against the defendant relate to the time between June 6, 1886, when Waldron came to Chicago to live, and June 21, 1887, the time when the plaintiff obtained her divorce from her husband,—a period of a little more than a year; and that is the period to which the plaintiff's evidence is mainly directed, so far as the charges against the defendant are concerned. The plaintiff can only recover by proving substantially the allegations contained in one or other of the two counts of her declaration; she cannot maintain her action by showing that her husband left her, although without good cause, came to Chicago, became intimate with the defendant, fell in love with and finally married her. The defendant cannot legally be made to answer in person or property on account of the shortcomings and misconduct, if such exist, of E. H. Waldron. She can be made to suffer only on account of a personal wrong, knowingly committed by her in the manner charged, against the marital rights of the plaintiff. A woman cannot be charged in such an action because a married man has become enamored of her, although after he becomes divorced from his wife she consents to marry him. There must be something more. There must be a direct interference on her part, a wrongful act or acts shown, whereby it is made to appear, to the satisfaction of the jury, as charged in this case, that she has wrongfully alienated the affections of the husband from the wife in one of the ways charged, either by debauching him, or by persuading or alluring him to desert and abandon the plaintiff, or in some way charged in the declaration. If E. H. Waldron alienated his own affections from his wife, or if they were alienated by the plaintiff's own conduct, or by Waldron's own conduct, or both, without the interference of the defendant, or if they were alienated by any other cause, known or unknown, over which the defendant had no control, or exercised no intentional direction or influence, then the plaintiff, howsoever unfortunate or wronged, cannot have her action against the defendant.

The defendant married E. H. Waldron in October, 1887, a year and eight months after her former husband's death, and four months after the decree of divorce dissolving the marriage relation between Mary Waldron and E. H. Waldron. She had an undoubted right to marry him when she did, and any intimacy existing between them after the marital relation between the plaintiff and Waldron were dissolved cannot be imputed as a wrong in this action; the wrongful act must have been committed previous to the divorce of June 21, 1887. Though alleged in one count of the declaration, I do not think it necessary to the plaintiff's case to prove that criminal relations ever existed between Waldron and the defendant. To find the defendant guilty under the first count, this would be necessary; but under the second count it would be enough to prove that she wrongfully persuaded, enticed, or allured him (Waldron) to desert and abandon the plaintiff, whereby the affections of Waldron for the plaintiff were alienated and destroyed. Did the defendant, between the times

alleged, lead E. H. Waldron from the path of virtue? Did she wrongfully debauch and carnally know him, whereby his affection for the plaintiff was alienated and destroyed, or did she wrongfully persuade, entice, or allure him to desert and abandon the plaintiff, whereby the affection of him (Waldron) for the plaintiff was alienated and destroyed? We know, as a matter of common knowledge and observation, that, as a general rule, men woo and women are wooed and won; that men seduce and allure and lead women from the path of virtue, and that women are allured, seduced, and led astray; but we also know, from common observation, that this general rule does not always hold, and that sometimes women woo men; that sometimes women allure, seduce, and debauch men; that women, upon occasion, induce, allure, and persuade men to abandon and desert their wives, and form new relations, lawful or unlawful. It will be for the jury to say, from all the evidence, what were the facts in this case, and whether the issue stands proved or unproved.

The plaintiff's evidence is directed to support the affirmative of the issue. It tends to show that previous to June 6, 1886, from the time of their marriage, in 1865, Mrs. Waldron and her husband had lived an ordinarily peaceful and happy married life; that she had a strong affection for her husband; that between June 6, 1886, and June 21, 1887, after Waldron came to Chicago, terms of friendship and intimacy sprang up and grew into unlawful proportions between Mr. Waldron and the defendant, then Mrs. Alexander; that he (Waldron) was seen at her house, on Michigan avenue, in this city, at almost all times of the day, and in the morning and evening; that they rode out together in her own carriage, in the day-time and the evening, on the streets and in the parks; that on one occasion, in Lincoln park,—on one or more occasions in the park,—they left the carriage in the evening, and took a walk together in the park, and afterwards returned to the carriage. That terms of endearment between them, as of lovers, were overheard. That on one occasion she kissed him, and was heard to say that she loved him, and that on one occasion, when she was ill, he (Waldron) lay upon her bed in the presence of other persons; that they were seen to embrace each other; that during the same period he ceased to provide for his wife's support in La Fayette; that he deserted and abandoned her, and failed to provide and care for her.

The defendant's testimony is directed to disprove this issue, and to deny and contradict the case attempted to be made by the plaintiff. Mr. Waldron and his wife, the defendant, flatly and positively deny that any unusual or improper relation existed between them prior to their engagement, in the fall of 1887. They deny that terms of endearment passed between them; that she ever kissed him, or said she loved him; that he was ever seen lying upon her bed; or that they ever embraced, or left the carriage and walked together in the park. The defendant's evidence is directed to prove that the marriage relations between Waldron and the plaintiff were infelicitous and unhappy; that at the time of the marriage, in 1865, she concealed from him the fact, of which he says he

had no knowledge, that she had lost her maiden virtue before her marriage to William Beaucamp, in 1857 or 1858, and that she had a child about two months after her said marriage, as also the fact that she obtained a divorce from Beaucamp, and that he was still living, whom Waldron supposed, at the time of the marriage to the plaintiff, to be dead; that she concealed from him the fact that she was a divorced woman, rather than a widow; that these concealments operated to injure and destroy the respect and affection he had entertained for his wife, and would otherwise have entertained; that after the discovery of these things their married life was unhappy; that he lost his respect and regard for her; that she was constantly jealous of him, and of his relations to other women, and this fact constantly made trouble between them; that he left her in 1884 and 1885 on one or two occasions, declaring his intent to never return to live with her; that after living apart for several weeks or months he was persuaded, by his wife and their friends, to return and live with her, and did so return, not because he was reconciled to or loved or respected her, but for the good of their son, Willard Winfield Waldron; that he finally left her in June, 1886, with the full, firm, and declared intention never to return; that his affections for his former wife were destroyed and alienated previous to his coming to Chicago, in June, 1886, and by causes disconnected with any act or influence done or exerted on the part of Mrs. Alexander, and over which she had no control. Gentlemen, this main issue it will be your duty to decide according as you believe the very truth to be from the evidence, the burden being upon the plaintiff to satisfy you by at least a preponderance in the testimony. You are to take the law and the evidence as your only guide, and, without fear or favor, follow these to a legitimate and just conclusion. If you do justice upon the law and the testimony given you in court, free from all other considerations, you will have fully discharged the obligation of your several oaths, and may safely allow consequences to take care of themselves. The weight and credence to be given to the testimony of any witness is a matter for the jury, under all the circumstances. You will consider the circumstances under which they severally give their testimony; their interest, if any, in the case; their bias or inclination, if any, to favor one side or the other; their manner and conduct upon the stand; the consistency and probability, or want of these, in their statements; and how they are corroborated or contradicted by other witnesses, or by the known facts in the case. If, under all the circumstances, you believe that little credit should be given a witness, or that his evidence cannot be relied upon, it will be your privilege to give him as little credence as, in justice, you may think right and proper, or reject his testimony altogether.

There has been an attempt to impeach two or more of the witnesses. One method of discrediting a witness is by showing that he has made statements out of court touching the cause that are inconsistent with his testimony, or would go to discredit him before the jury. So far as I know, it is a uniform rule of the courts of this country and England to allow such impeaching testimony; first calling the attention of the wit-

ness, upon cross-examination, to the matters, and asking him whether or not he has said or declared that which is intended to be proven. If he admits the words or declaration imputed to him, the proof on the other side becomes unnecessary, but if he denies it, or says he does not recollect, the adverse party may call a witness and contradict him. That is the course that was taken and allowed in this case. But it does not follow that because an attempt is made to impeach a witness, and witnesses are brought to contradict him, that therefore the witness is impeached, and his testimony is to be discredited. That is a question for the jury. Alter the impeaching testimony is in the jury are to consider both together, and give such credit, and no other or more, to the testimony, as you may think you ought to give under the circumstances.

The court has already adjudged that the decree of divorce obtained by the plaintiff from Mr. Waldron on June 21, 1887, is evidence conclusive in this case that the marriage relations between the plaintiff and Mr. Waldron were dissolved from the date of that decree. The decree of divorce acted on the *status* of the parties, and dissolved the marriage relation theretofore existing between them, and left each free to remarry; but the allegations contained in the bill of complaint in that case against Mrs. E. S. Alexander, the present defendant, are not evidence in this case, and were excluded by the court. The evidence also taken on the trial of that case is not competent evidence against the defendant in this case, and was also excluded; she not being a party thereto, and not permitted to appear and cross-examine the witnesses. Nor should the jury assume or infer from anything in evidence in this case that the judgment of divorce was granted upon the ground of adultery, as that is not one of the grounds alleged in the bill of complaint, nor upon any ground or for any causes having reference to the conduct of the defendant in this case. Such an inference has been sought to be drawn by counsel from the proceedings in that case, but it is an inference not warranted by the record in evidence, and unfair towards the defendant. The jury will try this case upon the evidence produced on this trial, and not assume or infer that other evidence might have been produced here, or was produced in some other case to which the defendant was not a party. If the jury should find for the defendant, you will have no question of damages to consider, and you will simply return a verdict of not guilty. If you find for the plaintiff, you will return a verdict that you find the defendant guilty, and you will assess the damages the plaintiff will be entitled in that case to recover. These should be apportioned and assessed according to the extent and character of the injury sustained by the plaintiff in consequence of the wrongful act of the defendant, from a consideration of all the circumstances in evidences in the case. If the injury caused by the wrongful act of the defendant has been great, the damages should be proportionately great. If the injury has been small, the damages should be proportionately small. If the jury should find from the evidence that the marital relations of the plaintiff and Waldron were unhappy; that when he left her, and came to Chicago, on June 6, 1886, he had already lost his respect and affection for the plaintiff; that

on account of the infelicity of their relations he then deserted and abandoned her without any hope of condonement or reconciliation; and that by reason of these things the marital relation existing between them was of little or no value to the plaintiff,—the jury, in such case, may, in the exercise of a sound discretion, if they think they are justified on a full consideration of all the evidence, return a verdict for a very small sum, or for nominal damages; but this is a question of fact wholly for the jury. The ground of damages will be mainly the injury to the plaintiff's feelings, the loss of her husband's support, his affections, his aid, society, and companionship, caused by the wrongful acts of the defendant, and should be fairly and dispassionately assessed, according to the nature and extent of the injury so sustained by the plaintiff, from a full and careful consideration of all the evidence and circumstances in the case, including, of course, the evidence given you of the pecuniary circumstances of the defendant; and, in addition to the damages compensatory in character, if the jury believe that the injury was inflicted wantonly and maliciously, they may, in their discretion, add thereto such sum as you may think just and proper as exemplary or punitory damages, as a punishment to the defendant.

Verdict for plaintiff for $17,500.

A motion for a new trial was made and overruled.