### HODGE *v*. BROOKS.

### Opinion delivered April 17, 1922.

1. APPEAL AND ERROR—IMPROPER EVIDENCE—INVITED ERROR.—In an action for alienating the affections of plaintiff's wife, where plaintiff, as part of his case in chief, offered testimony that plaintiff's credit was good, which testimony plaintiff announced was in rebuttal and offered at that time because the witness was called away, the error, if any, in admitting plaintiff's evidence that plaintiff's credit was bad and that he did not pay his bills was invited, and does not call for a reversal, especially where the court charged the jury not to consider the plaintiff's ability to pay his bills.

2. HUSBAND AND WIFE—ALIENATION OF AFFECTIONS—ILL WILL.—An instruction in an action for alienating the affections of plaintiff's wife that plaintiff must show that defendant "wrongfully and wilfully" alienated the affections of plaintiff's wife was proper.

3. HUSBAND AND WIFE—ALIENATION OF AFFECTIONS.—In an action for alienating the affections of plaintiff's wife, it is essential that plaintiff prove that there should have been a conscious purpose on defendant's part to do a wrongful act.

4. HUSBAND AND WIFE—ALIENATION OF AFFECTIONS—LIABILITY.—An instruction, in an action for alienating a wife's affections, that defendant was not liable if the affections of plaintiff's wife were

alienated by plaintiff's acts was called for by evidence on de-
fendant's behalf that plaintiff's wife left him because of his
neglect in failing to furnish proper support.

Appeal from Howard Circuit Court; *A. P. Steel,*
special judge; affirmed.

*W. P. Feazel* and *W. C. Rodgers,* for appellant.

1. The court in its instructions 1 and 17 placed a
greater burden on the plaintiff than is required by law
in such cases. Neither were they justified by the allega-
tions of the complaint. 88 Ark. 562; 89 Ind. 118, 127; 61
Ala 9, 11; 6 Wyo. 419; 45 Pac. 1073; 88 Mich. 633; 48
Minn. 466.

2. The court erred in admitting, over plaintiff's ob-
jections, testimony introduced by defendant to show
plaintiff's financial condition and in instructing the jury
that they could only consider the same as tending to show
facts that might have caused the separation or loss of
affections. 3 Ind. App. 232. Since the court later did
instruct the jury that they could not consider plaintiff's
poverty or his want of ability to pay his debts, etc., this
amounted to a conflict in instructions justifying reversal.
123 Ark. 594, 600.

3. It was not necessary to prove any particular sum
as damages, in order to recover. Proof of alienation of
the wife's affections and the breaking up of the home,
was sufficient. 88 Ark. 562.

*Steve Carrigan,* for appellee.

1. There is no error in the instruction complained
of. The word ''wilfully'' as used therein is proper.
Rodgers on Dom. Relations, § 177; 45 S. W. 652; 13 R. C.
L., § 513; 75 N. W. 101; 40 N. Y. 390; 45 Fed. 319. The
use of the word ''wilful'' in a civil action and instruction
does not carry with it the meaning of ''malice.'' 1
Bishop, Crim. Law, § 428; Webster's New Int. Dict.,
''Wilful''; 162 Fed. 556; 91 N. W. 904; 109 S. W. 1047;
91 S. W. 1123; 79 *Id.* 1111; 181 Mo. 192; 92 S. W. 674;
194 Mo. 377; 92 S. W. 684; 194 Mo. 717; 98 S. W. 2; 200
Mo. 1; 84 S. W. 984, 186 Mo. 174; 64 Atl. 194.

2.  The gist of the action is the loss, without justifiable cause, of the comfort, society and services of the wife.  If plaintiff's loss in this case was caused by the voluntary act of the wife, upon justifiable cause, he cannot recover.  If the loss was caused by the acts or persuasions of the defendant without any real cause, and in bad faith towards the plaintiff, he may recover; but the burden is on him to prove these facts.  40 N. Y. 390; 48 S. W. 601.

SMITH, J.  Appellant Hodge was the plaintiff below, and sued to recover damages for the alleged alienation of the affections of his wife by appellee Brooks, defendant below.  The testimony made a case which would have supported the verdict had it been in Hodge's favor, although no attempt was made to show that any immoral relation ever existed between Brooks and Mrs. Hodge, nor was there any testimony that these two had ever been seen in a compromising position, the nearest approach thereto being that it was testified that on one occasion Brooks showed Mrs. Hodge how to drive an automobile and during the lesson had his arm resting on the seat back of his pupil.  This occurred, however, in the day-time and on one of the principal streets of the town of Mineral Springs.

Hodge and his wife resided in a house with Brooks, the house being one Brooks had rented in the town of Mineral Springs.  The testimony shows that Brooks became dissatisfied with this arrangement and ordered Hodge to vacate.  This order was given and obeyed in February, 1921.  In April thereafter Mrs. Hodge left her husband and returned to her people, who lived in an adjoining county, where she has since resided, and in September thereafter Hodge brought this suit.

The conduct of Brooks complained of consisted principally of assistance to Mrs. Hodge in the discharge of her domestic duties and little personal services about the house; of carrying her from her home in Mineral Springs in an automobile owned by Brooks to Saratoga, ten miles away, where she taught school; and

in lending her money on two occasions, first to buy a knitting machine which cost about $75, and afterwards to buy a suit costing about $40. In explanation of this testimony, it was shown that Hodge and his wife were comparatively a young couple; that Brooks was sixty-four years old, and badly crippled with rheumatism, using two canes when he walked; that Brooks was physically unable to work, but his financial condition permitted him to live without working; that he drove Mrs. Hodge to her school at her husband's request and upon his promise to pay for the service; that, as Brooks had no regular employment, he assisted in the discharge of many of the little duties around the house as a matter of occupation and courtesy; and that the money loaned was lent with the knowledge and at the request of Hodge; and that Brooks had done nothing to induce Mrs. Hodge to leave her husband.

Over Hodge's objection the court admitted testimony to the effect that Hodge did not pay his bills and that his credit was not good. The error of this action was mitigated somewhat by an instruction numbered 8, given at Hodge's request, reading as follows: "You cannot take into consideration the poverty or want of ability of the plaintiff to pay his debts; nor the fact that the defendant, Brooks, may think that he does not give his wife the pleasures and luxuries that he, Brooks, thinks she ought to have in this case, since such matters do not justify the alienation of the affections of the plaintiff's wife from him, if they have been alienated."

If it be true that this instruction did not remove the prejudice arising out of the admission of the incompetent testimony, then it may be said that the error was an invited one. Hodge first testified in his own behalf, and then called as a witness Dr. Toland. It was stated at the time that Dr. Toland was being called out of time, as he had to leave town to visit a patient, and that the testimony was being offered in rebuttal. However, at that time there was nothing to rebut, as Hodge alone had testified. Dr. Toland was the owner

of the house which Brooks had rented at the time Hodge and his wife were living with him. Dr. Toland testified that Hodge's credit was good, and that he had never hesitated to attend either Hodge or his wife professionally, whether they had the cash money to pay for his services or not.

Numerous objections are urged to the instructions given in the case; but we think those which require discussion are disposed of by what we shall say in regard to instructions numbered 1 and 17 and another numbered 3 given at the request of Brooks and over Hodge's objection. Instruction numbered 1 reads as follows: "You are instructed that, in order for the plaintiff to maintain this action against the defendant, the burden devolves upon the plaintiff to show by a preponderance of the testimony that the defendant in this case wrongfully and wilfully attempted to alienate the affections of the plaintiff's wife, and that he wrongfully and wilfully attempted to deprive the plaintiff of his wife's society, and that such attempt was successful, and that this plaintiff was not a consenting party to such acts or conduct of the defendant by which plaintiff claims that the defendant alienated his wife's affections with." Hodge objected to this instruction generally and specifically "because the use of the word 'wilfully' and the words 'wrongfully and wilfully' would or might be misleading to the jury, and because the law gives relief in cases of this kind if the affections are alienated culpably, though not wilfuly and wrongfully."

Instruction numbered 17 reads as follows: "You are instructed that, before the plaintiff can recover in this cause, he is required to establish all the allegations of his case by a preponderance or greater weight of the evidence. Your verdict in this case must be based upon legal evidence submitted to you and not upon guesswork or conjecture. And if, after hearing all the evidence in the case, you are not satisfied by the preponderance or greater weight of the evidence that the acts of the defendant as alleged in the complaint are true, or that the defend-

ant wilfully and in bad faith to the plaintiff alienated plaintiff's wife's affections, your verdict should be for the defendant.'' Hodge objected to this instruction generally and specifically ''because it justifies a recovery notwithstanding the defendant may have alienated the affections of plaintiff's wife, providing he did not do so in bad faith, even though the jury might find that he did so wilfully and wrongfully. Also because the words 'wilfully' and 'wrongfully' as used in the instruction require a more flagrant case of alienation than the law calls for; also for the reasons stated in plaintiff's objections to instruction No. 1 given for the defendant.''

We think no error was committed in giving the instructions set out above. No specific objection was made to the use of the words ''bad faith,'' and we think they were used in the instruction in the same sense as were the words wilfully and wrongfully. Hodge was not required to show, to sustain his cause of action, that Brooks entertained any personal ill-will or malice towards him; but we do not think the instructions imposed that requirement. They did require that Brooks' conduct towards Mrs. Hodge should have been prompted by the conscious purpose of winning away from Hodge the *consortium* of his wife.

In the case of *Boland* v. *Stanley,* 88 Ark. 562, this court said: ''The loss of what is termed in law '*consortium*,' that is, the society, companionship, conjugal affections, fellowship, and assistance of the wife, is the principal basis for actions of this kind,'' that is, actions for alienating the affections of one's wife. In the same case it was also said: ''Whoever invades the hallowed precincts of a home, and, without justifiable cause, by any means whatsoever severs the sacred tie that binds husband and wife, alienating her affections from him, and depriving him of the aid, comfort and happiness of a loyal union between them, is liable in civil damages for his wrongful conduct. Rogers, Dom. Rel., § 177; Schouler's Dom. Rel., § 41; Tiffany, Per. & Dom. Rel. 74; 15 Am. & Eng. Enc. Law, 862. In such cases whether or

not there were malevolent or improper motives is always a material consideration.''

Without so intending, one might acquire or lose another's affections. The defense here interposed was that, by his own neglect, Hodge had lost the *consortium* of his wife, and several members of her family so testified. It was also denied that Brooks had won the affections of Mrs. Hodge; and it was further asserted that, if such was the case, there had been no conscious purpose so to do.

The thing forbidden and made actionable is the entry of a home by a wrongdoer and the consequent loss of *consortium* by the injured spouse; and it does not matter whether this entry is by physical violence or subtle influence; but it is essential that there should be a conscious purpose to do a wrongful act. One who does this has acted wilfully and wrongfully and in bad faith to the injured spouse, and is liable to respond in damages therefor.

What we understand to be a correct statement of the rule in such cases is found at section 515 of the article on Husband and Wife in 13 R. C. L. p. 1466, where it is said: ''As a general rule an intentional alienation or enticing away must be shown, and it may be laid down as a general rule, where there is no element of seduction or adultery, that a defendant in an action for alienation of affections is not liable unless he acted maliciously or from improper motives implying malice in law, whether he is a parent of or a stranger to the plaintiff's spouse. While it is true that, as is hereinafter shown, it requires more evidence to establish malice on the part of a parent than is necessary in the case of a stranger, this difference is an evidential one merely.''

Among the annotated cases cited in the note to this section is our case of *Boland* v. *Stanley, supra,* which is annotated in 129 Am. St. Rep. 114.

Other instructions objected to, including No. 3, mentioned above, declared the law to be that if the affections of Mrs. Hodge ''were alienated either by Hodge him-

self, or his conduct, or by any other act, except the wrongful acts of the defendant," the defendant was not liable. One is, of course, responsible only for the effects of his own conduct, and the instructions are not questioned as correct declarations of the law, but they are said to be abstract. We think it appears, from the very general statement we have made of the issues of the case, that instruction numbered three and others of similar purport are not abstract.

Upon a consideration of the whole case, we find no prejudicial error, and the judgment is affirmed.