## KAHN v. GROTHAUS.

No. 9992.

Court of Civil Appeals of Texas.
San Antonio. ·

April 7, 1937.

Rehearing Denied May 5, 1937.

Elmer Ware Stahl, A. R. Sohn, and Hull & Oliver, all of San Antonio, for appellant.

Boyle, Wheeler, Gresham & Terrell and H. M. Parker, all of San Antonio, for appellee.

SLATTON, Justice.

Appellant filed this suit in the Forty-Fifth district court of Bexar county, on the 5th day of January, 1935, against Emma Grothaus, seeking damages to the extent of $40,000 for the alleged alienation of the affections of her former husband, Dr. I. S. Kahn, by the said Emma Grothaus. A similar suit had been filed by the appellant against the appellee in the Thirty-Seventh district court of Bexar county, which asked for $100,000 damages, which was similar, if not substantially the same cause as set up in this suit.

The first suit was, on the 11th day of March, 1932, disposed of by a judgment that Lilyan Jardine Kahn take nothing by her suit against Emma Grothaus. The judgment entered on the 11th day of March, 1932, was pleaded by Emma Grothaus in bar of this suit. There was a trial to a jury and upon answers to special issues judgment was entered in favor of appellee and against appellant, hence this appeal.

The trial court adjudged the costs of this suit against the appellee; of this Emma Grothaus does not complain.

The appellant brings forward for our review twenty propositions assigning error, grounded upon twenty-five assignments of error. The record and briefs are rather voluminous. After reading the briefs and the entire record, it will only be necessary for us to discuss a few propositions of law, which we think will dispose of this appeal.

The evidence shows that the appellant, Lilyan Jardine Kahn, and Dr. I. S. Kahn were married at or near Cambridge, Mass., while Dr. Kahn was a literary student at Harvard; that at the time of their marriage Mrs. Kahn was eighteen years of age and Dr. Kahn was nineteen years of age; that about 1903 Dr. Kahn, after having been graduated by Harvard with a B. A. degree, was graduated from the medical department with an M. D. degree; that, after serving his interneship in Boston, he and Mrs. Kahn moved to the city of Dallas and resided there for a time, after which they went to the Republic of Mexico, and, finally, in about 1913, came to San Antonio. That the marital relation between Mrs. Kahn and R. Kahn was happy and, aside from the usual unimportant disagreements, continued up until about the year 1926, at which time a serious disagreement occurred between them, occasioned, perhaps, by the dislike of Mrs. Kahn for the mother of Dr. Kahn. Notwithstanding this disagreement, they continued to live together as husband and wife, and about 1928 another event happened between them, which we shall hereafter notice.

About 1920 appellee, Emma Grothaus, after being confined to her bed almost continuously for about two years, through a call from her parents, was visited professionally by Dr. I. S. Kahn. It appears that she had been diagnosed as a tubercular, which diagnosis was not agreed to by Dr. Kahn. Dr. Kahn diagnosed her case as one of asthma and treated her professionally for a period of eight or ten months, and as a result of his treatment she became greatly improved. She was then given a position in the office of Dr. Kahn, at a salary of $50 per month, to answer the telephone and greet the patients in Dr. Kahn's office. Having been a sufferer of asthma, she interested herself in the treatment of that disease and read all medical authorities on that subject, together with all current periodicals on the disease, and after four or five years became a technician with reference to the causes of the disease and the treatment offered therefor. Prior to 1928, it appears that the appellant and Emma Grothaus were on friendly terms. At about that time it appears that the appellant became jealous of Emma Grothaus and objected to her working in appellant's husband's office. At the time appellee had knowledge of this condition the appellee was advised by Dr. Kahn that Mrs. Kahn was a mental case. The record shows that Dr. Kahn was advised by specialists in the treatment of mental and nervous diseases that Mrs. Kahn was mentally ill. One specialist had been called, professionally, by the appellant, Mrs. Kahn, who testified in this cause, that Mrs. Kahn was mentally ill. He was called to testify by appellee.

To maintain her cause of action, Mrs. Kahn was the only one testifying in her behalf and the only evidence which she gave that would in anywise tend to prove any part of the cause of action asserted by her was the fact that on occasions, after the completion of the day's work at the office, Dr. Kahn had accommodated Miss Grothaus with a ride within a block of her home, which necessitated the doctor having to drive two or three blocks out of his way to his home, and that on occasions, the doctor's business having grown to caring for twenty-five to forty patients per day, for some four or five times at or near the first of each month, Miss Grothaus and the doctor would stay at the office, after office hours, for the purpose of making up the bills and, on some occasions, when making up the bills they would go to a public cafeteria and there have a meal together. Dr. Kahn testified that as soon as it was made known to him that his wife objected to these practices they were discontinued. The record further shows that on one occasion, at one of the downtown department stores, the appellant, without any cause, assaulted the appellee, Miss Grothaus; and on another occasion the appellant assaulted Miss Grothaus at Dr. Kahn's office. The record further shows that, beginning about the year 1931, a sister of the appellant was employed in Dr. Kahn's office, and continued to work there up until the time of her illness, which occurred shortly before the trial of this suit.

The record shows that some two or three years before the filing of this suit the appellant made a public scene in reference to Dr. Kahn, and made it known that she was going to his office with a pistol, at which time Dr. Kahn filed a divorce proceeding against the appellant, and, as stated by him

and corroborated by his attorney, for the sole purpose of being able to obtain an injunction to keep the appellant from interfering with his office. Shortly before this suit was filed, the appellant filed suit for divorce against Dr. Kahn, which was not contested by him, and a divorce was granted. The record shows that there was a community estate belonging to the appellant and Dr. Kahn, and in the property settlement Dr. Kahn gave to the appellant a luxurious home in Olmos Park, together with a life income of $250 per month. One of the brothers of appellant was called by the appellee and gave evidence as to her good reputation. The sister, who worked with appellee and Dr. Kahn in his office, did not testify; however, she was attempted to be subpœnaed by the appellee.

■ At the close of the evidence offered by appellant and appellee, the appellee asked the trial court to instruct the jury to return a verdict for appellee, which was overruled. We think the motion should have been granted.

■ While we have been unable to find a case in Texas involving this class of cases, there is an abundance of authority which will be illustrative of our views of the law which we think controls the disposition of this case. In the case of Garrett v. Hunt, 283 S.W. 489, 491, our Supreme Court, speaking through the Commission of Appeals, say: "It is the duty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the fact sought to be established." Citing Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

■ In the case of Baker v. Loftin, 222 S.W. 195, 198, our Supreme Court, speaking through the Commission of Appeals, say: "While, generally speaking, any fact may be established by circumstantial evidence, yet such evidence must have probative force sufficient to constitute the basis of a legal inference. It should not be of such character as to permit of purely speculative conclusions."

■ The nature of this kind of a suit involves a wrong, which carries with it a degree of moral turpitude, and we think that before one can recover in such an action it is necessary to substantiate the allegations of misconduct with proof. Can it be said that it involved any sort of misconduct for a lady to remain in a doctor's office after office hours for the purpose of making out bills, in this day and age, when women are engaging in business in almost every walk of life? To so hold would render it rather precarious for any woman, regardless of her standing, to accept employment in the office of any man. And, further, can it be said that there is anything inherently wrong in a young woman, in the employ of a doctor or any other business man, while being compelled to remain at the office through a mealtime, to go with that doctor or that business man to a public eating place and lunch together? Assume that such was the commandment of the employer, must she be held to have broken up a home and to be liable for damages for wrongs, as here asserted? We certainly think not. We think the same reasoning may be applied to the occasions when Dr. Kahn accommodated Miss Grothaus by taking her to her home after her office duties.

■ We know of no rule of law that would compel a young woman, even after she ascertains that her employer's wife is jealous and is desirous that she not work for her employer, to refuse to work for her employer and take her chances of obtaining employment elsewhere. What is condemned under the law in this kind of case is the intentional alienation of affections. As is said by the Supreme Court of Arkansas in the case of Hodge v. Brooks, 153 Ark. 222, 240 S.W. 2, 4: "The thing forbidden and made actionable is the entry of a home by a wrongdoer and the consequent loss of consortium by the injured spouse; and it does not matter whether this entry is by physical violence or subtle influence; but it is essential that there should be a conscious purpose to do a wrongful act. One who does this has acted willfully and wrongfully and in bad faith to the injured spouse, and is liable to respond in damages therefor."

Our views are sustained by the following authorities: 30 C.J. p. 1145, § 1019, note 44a; Stewart v. Hagerty, 251 Pa. 603, 96 A. 1099, Ann.Cas.1917D, 483.

The appellant has cited to us no case, and we have been unable to find one, holding that, in a case like this, the evidence, either direct or circumstantial, is sufficient to sustain a judgment against the appellee. She has cited an abundance of authorities on the proposition that where the evidence shows wrongful acts within them-

selves, such as seduction or adultery, that the person charged must be presumed to intend the natural consequence of his or her act. Appellant here, in her evidence, testified that she knew of no wrong between the appellee and Dr. Kahn, except as hereinbefore discussed, but that, in her opinion, is sufficient to enable her to recover. To our minds such evidence does not even raise a suspicion and that evidence, taken with other evidence in the record, causes us to seriously doubt whether the affections of Dr. Kahn for the appellant have been broken. His desisting from taking Miss Grothaus home and making up the bills after office hours in the office, the employment of Mrs. Kahn's sister in his office, and the giving to Mrs. Kahn practically all of the community property to be held by a trustee for her, and guaranteeing to her an income of $250 per month for her life, all negative the idea that at the time of the trial of this cause Dr. Kahn was not still solicitous of his former wife's welfare. Apparently he considered her mentally ill and overlooked many unpleasant occurrences during their marriage relations. Our view, with reference to whether or not the appellant had lost the affections of Dr. Kahn, was also entertained by the jury, wherein the trial court submitted to the jury the question of what amount of damages the appellant had sustained, to which the jury answered, "None." We think, also, that under all the evidence in the record that it probably negatives any intent on the part of the appellee to alienate the affections of Dr. Kahn toward the appellant. Our view was also entertained by the jury, for, in answer to question No. 5, which reads as follows: "Do you find from a preponderance of the evidence that the acts, if any, or conduct, if any, of defendant (as is above inquired about) was done by the defendant with the intention of alienating the affections, if any, of Dr. Kahn for the plaintiff?" they found in the negative.

The record in this cause presents a tragic story of the affairs of human life, and we have approached the determination of this cause appreciating our full responsibility to do justice to both parties, but, for the reason that the evidence failed to meet that quantum of proof necessary to sustain an action such as this, the judgment of the trial court must be affirmed. Thus all other claimed errors of the trial court become immaterial. It is so ordered.

### On Motion for Rehearing.

Appellant calls our attention to some inaccuracies in our opinion, which we desire to correct. We stated that in the divorce proceedings instituted by appellant, that such proceedings were not contested by Dr. Kahn. This is an error, the record is silent as to whether or not Dr. Kahn contested the divorce proceedings. We were also in error in stating that Dr. Kahn in the property settlement provided for an income of $250 per month for the life of Mrs. Kahn; The provision was for an income of $250 per month for a period of two and one-half years.

While these inaccuracies are not material to the disposition made of the case, we gladly make the corrections. Believing that our previous disposition of the case is correct, the motion for rehearing will be in all other respects overruled.