[Civ. No. 10351. First Appellate District, Division One.—September 28, 1938.]

ARMA M. STEELE, Appellant, v. MARIE WERNER, Respondent.

O. M. Van Duyn for Appellant.

Hettman & Scampini and Herbert Chamberlin for Respondent.

KNIGHT, Acting P. J.—Plaintiff appeals from an order granting defendant's motion for a new trial in an action to

recover damages for the alleged alienation of the affection of plaintiff's husband.

The principal question presented is whether the evidence adduced at the trial was insufficient as a matter of law to support a verdict in plaintiff's favor. Such question arises out of the following situation: On two occasions during the trial defendant moved for a directed verdict; first, when plaintiff rested her case in chief, and again when all the evidence, including defendant's, had been received. ■ Under well-settled rules such a motion may be granted when, disregarding conflicting evidence and giving to the evidence adduced on behalf of the plaintiff all of the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were rendered (*Perera* v. *Panama-Pacific Int. Exp. Co.,* 179 Cal. 63 [175 Pac. 454] ; *Estate of Sharon,* 179 Cal. 447 [177 Pac. 283] ; *Newson* v. *Hawley,* 205 Cal. 188 [270 Pac. 364] ; *Estate of Lances,* 216 Cal. 397 [14 Pac. (2d) 768]) ; ■ but it is equally well settled that the improper denial of such a motion constitutes an error in law occurring at the trial which justifies the trial court in granting a new trial on that ground. (*Carton Corp.* v. *Superior Court,* 76 Cal. App. 434 [244 Pac. 932] ; *Montgomery* v. *Globe Grain & Mill. Co.,* 109 Cal. App. 695 [293 Pac. 856] ; 20 Cal. Jur. 137.) Here the motion for a directed verdict in each instance was denied; and one of the several grounds specified by defendant in her motion for a new trial was errors in law occurring at the trial. (Subd. 7, sec. 657, Code Civ. Proc.) The order granting the motion was general in its terms; but on this appeal plaintiff contends as main ground for the reversal of said order that the trial court's rulings denying defendant's motions for directed verdict were not improper, and that consequently its order granting a new trial cannot be sustained on the ground that they were. As will be seen, the merits of such contention cannot be intelligently considered and determined without first having examined the evidence to ascertain whether it was insufficient as a matter of law to support a verdict in plaintiff's favor, because if it was, then necessarily the rulings denying said motions constituted errors in

law occurring at the trial, which justified the trial court in granting a new trial on that ground. After having made such examination we are convinced that defendant's motions for a directed verdict were improperly denied, and hence that the trial court's order granting a new trial should be upheld.

As said in *Berger* v. *Levy*, 5 Cal. App. (2d) 554 [43 Pac. (2d) 610], the gist of a cause of action of this kind is the enticing or taking away of the husband or the wife of another, and the alienation of his or her affections. ■ That is to say, in order to maintain such an action it must be established that the husband or the wife, as the case may be, was induced to abandon his or her affection for the other by some active, intentional and wrongful interference on the part of the defendant; and in this connection it is held that there is no cause of action where a spouse voluntarily gives his or her affection to another, the latter doing nothing wrongful to win such affection; nor is mere proof of abandonment, or that the husband or wife may be maintaining an improper relation with another, sufficient to establish a case. Among the numerous cases cited in *Berger* v. *Levy, supra,* in support of the foregoing doctrine is *Waldron* v. *Waldron,* (C. C.) 45 Fed. 315, wherein the court goes on to say that if the husband alienated his own affections from his wife, or if alienated by plaintiff's own conduct, or both, without the interference of the defendant, or if they were alienated by any other cause over which the defendant had no control or exercised no intentional directions or influence, there is no cause of action.

■ Summarized, the evidence in the present case shows that about the middle of August, 1934, while plaintiff was absent from her home in San Francisco visiting her mother, plaintiff's husband, Arthur Steele, formed the acquaintance of the defendant, a married woman who was visiting in San Francisco at the time, and that for the ensuing two weeks, while Steele's wife was still away, and for approximately four weeks after she returned home, her husband and the defendant carried on a friendly social relationship, at the end of which time defendant returned to her home and husband in Texas. But the record fails to disclose any evidence whatever from which it may be reasonably inferred that Steele's affections for plaintiff ever were in fact alienated, or which tends to establish directly or inferentially that the defendant

ever suggested, encouraged, or attempted to persuade him to give up his affection for his wife, much less to abandon her. Specifically, the essential facts established were these: The defendant, Mrs. Werner, was the wife of a practicing attorney in Texas, to whom she had been married a number of years. She had relatives and friends living in the bay regions, and she often spent the summer months in San Francisco, sometimes being accompanied by her husband. During this particular visit she stayed at the Huntington Apartments. The plaintiff, Arma M. Steele, and her husband, a stock and bond salesman, had been married for twelve years but for several months prior to the commencement of the present action there had been more or less marital unhappiness because of Steele's somewhat embarrassed financial condition, and his excessive indulgence at times in intoxicants. In July, 1934, plaintiff left San Francisco to visit her mother for six weeks, and near the end of that time she received a letter from her husband suggesting that she extend her visit. Her suspicions were aroused by the suggestion, and so she returned home at once, reaching San Francisco at the end of August. Upon entering her apartment she found a handkerchief spotted with rouge, and for the next few days she noticed that her husband's attitude toward her seemed to be cool and indifferent. At the end of a week's time they "talked things over", and in response to her expressed suspicions that he was "going out" with another woman, he practically admitted so doing. For the next three weeks he was irregular about coming home to his meals, sometimes staying away until 1 o'clock in the morning, and refusing to give any explanation as to his whereabouts. On the afternoon of Sunday, September 23d plaintiff happened to observe his car parked in front of the Huntington Apartments, and she phoned at once to a private detective agency to make an investigation, and they ascertained that he was visiting the apartment of a married woman from Texas named Werner. Toward evening Steele and the defendant were seen leaving the Huntington Apartments together, and they were trailed about town by said detectives. They were seen dining together in the main dining room of a large restaurant, then going to a theater, and afterwards returning to the Huntington Apartments, where Steele remained until

after midnight. The following night, September 24th, about 11 o'clock plaintiff and said detectives went to defendant's apartment and rang the bell. The defendant unlocked and opened the door; and according to the testimony given by the detectives and plaintiff, defendant was wearing a kimono and house slippers. They inquired if she was Mrs. Werner and she replied that she was; thereupon the detectives and plaintiff walked into the apartment and saw Steele lounging on some pillows on a couch with his coat off. Nothing was said more than that the detectives asked plaintiff if the man was her husband, and upon receiving an affirmative reply they departed. The next day, September 25th, plaintiff filed the present action for damages. Meanwhile defendant moved to an apartment house on Pacific Avenue, and that afternoon Steele's car was seen parked in front of those apartments. The evidence further shows, however, that on September 21st, four days before Steele was found in defendant's apartment, defendant made reservations to return to her home in Texas on the train leaving San Francisco on the evening of September 25th, and that she took the train at that time as intended. Steele went down to the station to bid her good bye. The private detectives were there also, and one of them boarded the train and served the summons in the present action on defendant just as the train was pulling out of the station. The next day, September 26th, plaintiff filed an action for divorce on the ground of cruelty.

When the present action came on for trial in August, 1935, defendant was in attendance, accompanied by her husband, who assisted in the defense thereof. Steele was also present. Defendant was called as a witness by plaintiff pursuant to the provisions of section 2055 of the Code of Civil Procedure, and Steele was called as a witness by the defense; and it appears from the testimony given by them that in addition to the two or three occasions already mentioned, Steele visited the defendant at her apartment several other times, sometimes during the daytime and other times in the evening; that on one of those occasions he was invited there to join defendant and others in a bridge game, and at another time to attend a birthday party at which others were present; furthermore, that during their acquaintanceship defendant accompanied Steele on two automobile rides,

once to Marin County to visit friends, and at another time while she was staying at the home of a friend in Alameda County.

With respect to the episode of September 24th, the circumstances leading up thereto, according to their testimony, were these: On that day defendant spent most of her time packing her trunks and luggage preparatory to leaving the next night, and during the afternoon some of her friends called to bid her good bye, all of whom departed about 5:30. An hour or so later Steele called and he stayed until shortly after the appearance and departure of his wife and said detectives. Soon after he arrived he served himself with two drinks of whiskey from a flask he brought with him, and defendant, although at first declining to join him because, so she stated, her doctor had forbidden her from drinking, afterwards served herself with a drink from a bottle of her own. Later, together they prepared and ate a light lunch, and then cleared away the dishes, following which Steele remarked that he was uncomfortably warm and asked permission to remove his coat; and it was soon after he had done so that his wife and said detectives arrived at the door of the apartment. Both denied emphatically that there had ever been any undue familiarity between them, or that defendant ever sought to influence him with respect to his affections for his wife. Defendant admitted that at the end of August she learned that Steele was a married man, but in this connection she stated that he explained to her that his marital life was unhappy; that at all times he appeared to be "a very pleasant and entertaining gentleman", and that under the circumstances she believed it was not wrongful to continue their friendly association during the remainder of her visit in San Francisco.

The evidence further shows that within a few days after defendant's departure for Texas Steele wrote several lengthy letters to his wife, wherein he professed most profusely his love and affection for her, and in tearful tones begged for a reconciliation. The letters are too lengthy to be here quoted, and besides no useful purpose would be subserved in so doing. It will suffice to say that in the absence of any evidence to the contrary, the contents of these letters clearly demonstrate that Steele's affections for his wife were never

alienated to the extent of givng rise to an action for damages.

For the reasons stated it is our conclusion that defendant's motions for a directed verdict were improperly denied; and that therefore the trial court was justified in granting a new trial on that ground. Additional points are urged by defendant in support of the trial court's order, but in view of the conclusions reached on the main issue, those points do not require discussion or determination.

The order appealed from is affirmed.

Maxey, J., pro tem., and Cashin, J., concurred.