### SMITH et al. v. SMITH.

No. 5990.

Court of Civil Appeals of Texas.
Amarillo.

Nov. 28, 1949.

Rehearing Denied Jan. 16, 1950.

Brown & Brown, Texarkana, for appellants.

J. Willard Gragg, Charles H. Storey, Dallas, for appellee.

PITTS, Chief Justice.

This is a suit for damages by reason of alleged alienation of affections filed by appellee, Janis Maxine Smith, originally against appellant, Juanita Kidd, charging that the said appellant had alienated the affections of appellee's former husband, John E. Smith, who was subsequently joined as a party defendant in the trial court by reason of his marriage to appellant, Juanita Kidd, and his last name was thereafter likewise added to Juanita Kidd's name. Appellee pleaded in part that Juanita Kidd was a wealthy young widow who wore expensive clothes and drove an expensive automobile, all of which she used in luring appellee's husband, John E. Smith, away from her. The case was tried to a jury which heard the evidence consisting of admissions of fact made by appellants and the testimony of appellee only. Upon the verdict of the jury judgment was rendered for appellee, from which judgment appellants perfected their appeal to the Court of Civil Appeals of the Fifth Supreme Judicial District and the same was transferred to this court by order of the Supreme Court.

 Appellants present numerous points of error charging principally that the evidence did not justify a submission of the case to the jury and that the evidence was insufficient to support the jury's findings. In considering the charges made, the evidence must be considered in the light most favorable to the actions of the trial court and the findings of the jury. The jury found that wrongful acts and conduct of appellant, Juanita Kidd Smith, were the producing cause of the separation of Janis Maxine Smith from her husband, John E. Smith. The jury further found in answer to appellants' requested special issues numbers 1, 2 and 3 that appellee did not by her own actions and conduct cause the alienation of the affections of her former husband, John E. Smith; that John E. Smith did not alienate his affections from his former wife by his own actions and conduct, independent of anything appellant Juanita Kidd Smith did or did not do and that John E. Smith's affections were not alienated from appellee Janis Maxine Smith by any person or persons or by any cause other than the things said and done by appellant Juanita Kidd Smith. The jury further found that appellee had been damaged in the sum of $25,000 as a pecuniary loss sustained only by reason of being deprived of such earnings of her former husband as would have been supplied and contributed to her had they not separated and for the value to her of the loss of the society of her former husband which she would have enjoyed had they not separated. No exemplary damages were awarded because the jury further found that appellant, Juanita Kidd Smith, was not actuated by malice toward ap-

pellee in committing the acts and in being guilty of the conduct reflected by the evidence heard.

The evidence reveals that appellee and appellant, John E. Smith, married September 12, 1931, and lived a normal, happy, congenial life together for some fifteen years, during which time he and his wife were faithful to each other. They had bought their own home and were paying it out by installments. One son was born to their marriage whose name is Jack Earnest Smith and he was six years of age at the time of the trial of this case on February 7, 1949. John E. Smith was engaged in a business that took him away from home much of the time but he usually spent the week-end at home. The family attended Sunday School and Church regularly. John E. Smith's average annual net income was about $4,000 and he seemed greatly interested in seeing that his wife and child had the best of attention and all the comforts he could provide. He was about 40 years old in 1946 and had a life expectancy of a little more than 28 years at the time of the trial.

In October of 1946 on Friday night at a late hour Juanita Kidd called John E. Smith by telephone at his home several times in the same night, at two or three o'clock in the morning. Appellee heard her husband's part of the conversation. He had little to say over the phone and made excuses and at first refused to tell appellee who was calling but finally told her it was Juanita Kidd who made the several calls, but he made excuses and did not divulge the nature of her business. Juanita Kidd called John E. Smith at his home again about six o'clock that morning and again at noon and appellee began to draw her own conclusions. Juanita Kidd called John E. Smith again at his home at ten o'clock that (Saturday) night and she called again at midnight the same night after the family had retired. John E. Smith then got up, dressed and told his wife, appellee, he was going to Tyler where Juanita Kidd lived. When appellee asked why he was going to Tyler, he replied, "I am going down there and bring her back up here and make her tell the truth to you." He left and returned next morning at six o'clock (Sunday) but Juanita Kidd did not return with him. He told appellee that he went to Tyler and tried to get Juanita Kidd to come and tell appellee the truth but she refused to do so. Soon thereafter John E. Smith left town again for a couple of weeks. After his return home for the week-end he told appellee that everything was all right, told her he loved her and asked her to forget all about the past incidents. He left again the following Monday morning. At noon that day appellee had a long-distance telephone call from Juanita Kidd in Tyler, who asked appellee if she knew who it was and appellee replied she thought she did but Juanita Kidd told her who it was. She asked appellee if "Smitty", meaning John E. Smith, spent the week-end at home. Appellee replied that he did. Juanita Kidd then asked if he stayed in the home and slept in the room with appellee. She was informed by appellee that he did. Then Juanita Kidd asked appellee a very personal question, to which appellee replied, "I don't have to answer that to you whatsoever; now since you asked me that personal question, let me ask you something, have you had any intimate relations with my husband?" Juanita Kidd replied, "I may smoke and I may drink, and I may cuss like a sailor, but that is one thing I don't do." Appellee then heard her husband, John E. Smith, laugh and heard his voice over the phone. She knew he was in the room with Juanita Kidd during the conversation and she asked to talk to him and she then heard Juanita Kidd say, "Smitty, she heard you, she wants to talk to you." But he refused to talk to his wife, appellee. Continuing the conversation, Juanita Kidd then advised appellee that, "In November of 1945 I was in a party with your husband, and he told me before a group of my friends that he was going to marry me someday, and he is, or else. Now, we are going to New Orleans to see Johnnie Richter. If you want us you can find us there." Appellee thought they had gone to New Orleans as Juanita Kidd had said, but she checked her husband's route sheet in the local office soon

thereafter and found he was supposed to be working in Houston that week. She called her husband's room in the San Jacinto Hotel at Houston and Juanita Kidd answered the phone. Appellee did not get to talk to her husband then but he called her soon thereafter. In that conversation she told him how terrible he was treating her and they talked a little about business matters. Appellee checked further and learned that her husband and Juanita Kidd went to New Orleans from Houston later that week. She had previously suspected that her husband and Juanita Kidd had been travelling together while he was engaged in his work. On one occasion in May of 1946 she had found a brassiere in his laundry and he tried to excuse himself for that discovery. In view of things that had subsequently happened she had finally learned that her husband was not true to her. Next day after she talked with her husband in Houston she received an air mail special delivery letter from him written in his own handwriting and post marked "Houston, Texas, November 13, 1946, six a. m.". She received the letter the same day, the contents of which was as follows:

"My Darling

"I am crazy—but you must pay that bill as you promised—you will have the 15th and all other check to first of year—I can't explain but don't do anything for about three weeks I will be eather dead or can do something—I will see you are protected & I will never take Jack don't black me in front of him take care of him & yourself

"love untill death—John

"I may have ½ million dollars by first of year—yes I may be nuts & run you crazy but I will be careful and see you all have the best of everything—I want you to have chevrolet and sell Buick—don't sell lot and help Jack you may make lots money out of lot—

"Please keep stiff upper lip for a while anyway—wait wait—???

(s) John"

Two weeks later John E. Smith returned home, apologized to his wife, asked her to forgive him for his mistakes, said he was truly sorry, told her he was through with Juanita Kidd and would not see her again, and asked her to take him back. Appellee then agreed to live with him for the sake of their son. They both agreed they should live together for the sake of their child. When he came home for the reconciliation, he was wearing a gold watch band that he said Juanita Kidd had given him for a birthday present. Appellee asked him not to wear it thereafter but he continued to wear it, showed it to his friends and members of the family and told them who gave it to him. Soon thereafter in December of 1946 Juanita Kidd called the home of John E. Smith from Tyler and appellee answered the phone. Juanita told who she was and asked appellee how she liked the way she got her husband back. Appellee replied that she didn't get him back but he came back of his own accord. Juanita asked further about some money "Smitty" owed her but appellee assured her she knew nothing about it. Juanita then asked to talk to "Smitty" who told Juanita that "it still stands. I love my wife and my little boy more than anything in the world." After the said telephone conversation John E. Smith told his wife he must go to Tyler and get his laundry from Juanita Kidd. He made the trip and returned with his laundry. He continued to make frequent trips out of town and became cool toward his wife. In December of 1946 he was out of a job and had little money, yet he came home from one of his trips out of town with an expensive Hartman Two-Suiter luggage for which he did not give a satisfactory explanation. Immediately thereafter and just prior to Christmas he wanted to make a hunting trip while his wife was ill with a strep throat. She protested his leaving but finally consented for him to go. However, he became angry, choked his wife, took her and their son to her mother's home where he left them and went on his hunting trip.

Appellee learned of her husband's continued attentions to Juanita Kidd and she filed suit for a divorce from him on January 7, 1947. She was granted a divorce soon thereafter and given the custody of

the child with its support partially provided for and a division of the community property made in the divorce judgment. Soon after the divorce was granted Juanita Kidd and John E. Smith were married.

The record reveals that both appellants attended the trial, yet neither of them testified or made any denials of appellee's testimony. On the contrary, at appellee's request for admissions of fact by an adversary as authorized by Rule 169, Texas Rules of Civil Procedure, appellants both admitted that they had stayed together in several hotels during 1946. They further admitted specifically that they had registered as husband and wife and stayed together at the Angelina Hotel in Lufkin, Texas, during the week of May 6, 1946; at the Marion Hotel in Little Rock, Arkansas, during the week of May 28, 1946; at the Virginia Hotel in Monroe, Louisiana, during the week of July 14, 1946; at the Hotel Charleston in Lake Charles, Louisiana, during the week of July 23, 1946; at the Rice Hotel in Houston, Texas, August 6, 1946; at the Pleasant Hotel in Mount Pleasant, Texas, on November 7, 1946; and at the Weslaco Hotel in Weslaco, Texas, on November 16, 1946. They both further admitted that on or about November 16, 1946, they visited together in the Rio Grande Valley during which time Juanita Kidd was introduced by John E. Smith as his wife. Juanita Kidd Smith further admitted that she had been married twice before she married John E. Smith. She further admitted that she owned considerable personal property and real estate, most of which was located in Smith County, Texas, and the same was separately listed in her admissions.

Appellants rested in the trial court when appellee rested and the evidence closed without appellants offering any rebuttal testimony. We find nothing in the record which we think would authorize us to discredit the testimony of appellee; however, it is our opinion that her testimony was strengthened by appellants' failure to controvert the same. In the case of L. E. Whitham & Co. v. Allen, 64 S.W.2d 1024, 1025, this court held that: "The rule that the uncorroborated testimony of interested witnesses, although not controverted, does not conclusively establish a fact, is not applicable where the nature of the testimony is such that it might readily be discredited, if it were not true, and the adverse party offers no disparaging proof whatever."

This court further held in the case of Union Central Life Ins. Co. v. Williams, 99 S.W.2d 319, that the force of evidence, though it may be slight, is greatly increased by the failure of the opposite party to rebut it, where it is obvious that such could be easily done. In the case of Dallas Joint Stock Land Bank of Dallas v. Harrison, 135 S.W.2d 573, Justice Dunklin held for the Fort Worth Court of Civil Appeals that the failure of a party to take advantage of an opportunity to explain inculpatory circumstances is evidence against him, and a party's failure to produce evidence in his possession which might have rebutted a presumption against him, strengthens such presumption. That case was reversed for other reasons by the Supreme Court reported in 138 Tex. 84, 156 S.W.2d 963, but the rule there cited is likewise found in 17 Tex.Jur. 306, Section 87, which cites numerous authorities to support it.

We think these rules apply in this case and serve to strengthen appellee's cause of action since the record reveals that appellants were both present during the trial but did not see fit to refute any testimony given by appellee. Their admissions introduced by appellee strongly corroborated her testimony.

The fundamental elements for consideration in a suit of this nature are the affections between the alleged alienated spouse and his wife and between him and the party alleged to have alienated his affections. Such affections can often be more easily determined in a case such as this by the acts and conduct of the parties involved than they can by their assertions. The gist of the alienation of affections action is the intentional or purposeful alienation of the affections of one spouse from the other; the damage, if any, in such a case is for loss of consortium and

not particularly the transfer of affection from one to another. To establish a cause of action in such a case, it is not necessary to establish a loss of all elements included in the full meaning of the term consortium, but that any substantial impairment thereof, through unjustified intentional conduct, creates a cause of action in favor of the spouse who suffered the loss against the offender. To render one liable to a wife for the loss of consortium, which includes right to affection, society, comforts, and the assistance of her husband, no ill will toward the wife need be shown and one must be presumed to intend the natural consequences of his or her acts. It is no defense that the injured party abandoned the other spouse after the alienation had been accomplished. These rules are supported by 30 C.J. 1128 and 1129; 42 C.J.S., Husband and Wife, §§ 677, 680, and by the cases of Collier v. Perry, Tex.Civ.App., 149 S.W.2d 292; Norris v. Stoneham, Tex. Civ.App., 46 S.W.2d 363; Jackson v. Jackson, Tex.Civ.App., 35 S.W.2d 830; Peters v. Pursley, Tex.Civ.App., 278 S.W. 229; Kahn v. Grothaus, Tex.Civ.App., 104 S. W.2d 932; and Williams v. Rearick, Tex. Civ.App., 218 S.W.2d 225. However, it appears that the evidence presented in the two cases last cited was much weaker than the evidence in the case at bar and did not support the charges made. But some of the rules governing such a case were there clearly stated. Where adultery is admitted or proved, as was done in the instant case, there is authority to the effect that loss of consortium is conclusively presumed. Alex v. Strickland, 111 Okl. 267, 239 P. 596, and 42 C.J.S., Husband and Wife, § 687, page 332. Under the authorities cited and others, actual intent to alienate is presumed where the acts of the party complained of are inherently wrongful and seductive and tend to have the effect complained of as is shown in the case at bar. The jury found that the wrongful acts and conduct of Juanita Kidd Smith caused the separation of appellee and her former husband; that the alienation of her former husband's affections for appellee was not caused by him, nor by his wife, appellee, nor by any person or persons other than Juanita Kidd Smith. By reason of which the jury found that appellee had sustained a pecuniary loss for which she was entitled to receive the sum of $25,000. Three of the five special issues about which appellants complain were submitted to the jury at the request of appellants. It was the answers of the jury to appellants' three requested special issues that definitely made Juanita Kidd Smith responsible for the alienation of the affections of appellee's former husband. Each of the said requested special issues was framed in such a manner as to presume the existence of the alleged alienation of affection, leaving only the question of who was responsible for such to be determined. However, the jury had previously found that Juanita Kidd Smith's wrongful acts and conduct were the producing cause of the separation. It is our opinion that the issues submitted were material issues and that the evidence warranted the submission of all of them to the jury and that the evidence amply supports the findings of the jury in answer to such special issues. It is our conclusion that the trial court rendered a proper judgment based upon the pleadings and the verdict of the jury against appellant, Juanita Kidd Smith, for the sum of $25,000. All of appellants' points to the contrary are overruled and the judgment of the trial court is affirmed.