**Proxey H. SMITH, Appellant,**

v.

**RED ARROW FREIGHT LINES, INC.,**
**Appellee.**

No. 14835.

Court of Civil Appeals of Texas.
San Antonio.

July 29, 1970.

As Amended on Denial of Rehearing
Oct. 14, 1970.

Second Rehearing Denied Nov. 12, 1970.

Chapin & Narciso, San Antonio, for appellant.

John H. Wood, Jr., Beckmann, Stanard, Wood & Keene, San Antonio, for appellee.

CADENA, Justice.

Plaintiff, Proxey H. Smith, who sought to recover from defendant, Red Arrow

Freight Lines, Inc., damages for the death of her two minor sons, Carl, aged 17, and Leon, aged 16, appeals from a judgment, based on a jury verdict, denying her any recovery for Carl's death, and limiting her recovery for Leon's death to medical and funeral expenses totalling $1,016.35.

The two boys died as the result of injuries received when the Smith car, driven by Carl, was involved in a collision with one of defendant's trucks. The jury found: (1) The negligence of defendant's driver in failing to keep a proper lookout was a proximate cause of the collision and resulting deaths. (2) Carl was guilty of several acts of negligence, each of which was a proximate cause of the accident. (3) Carl's negligence is not imputable to Leon. (4) Except for funeral and medical expenses, plaintiff suffered no pecuniary damages as a result of Leon's death.

Plaintiff first complains of the refusal of the trial court to submit her requested issues inquiring whether defendant's truck was being negligently operated at an excessive rate of speed; whether such negligence was a proximate cause of the accident; and whether the excessive speed of the truck was the sole proximate cause of the accident.

■ We agree with plaintiff that there was sufficient evidence to raise the issue of the truck's excessive speed, and that the trial court erred in failing to submit the requested primary negligence cluster of issues concerning speed. However, insofar as the liability-fixing functions of the speed negligence and "a" proximate cause issues are concerned, the error was harmless. With reference to Leon's death, the issues submitted and answered entitled plaintiff to recover, and a further group of findings that the negligent speed of defendant's driver was a proximate cause of Leon's

death would be irrelevant. Similarly, such findings would be irrelevant in connection with Carl's death, since his contributory negligence barred plaintiff's recovery irrespective of the number of negligent acts attributable to defendant's driver.

The conclusion that the failure to submit the three additional primary negligence issues was harmless error is precluded only if plaintiff was entitled to submission of the issue inquiring whether the excessive speed of the truck was the sole proximate cause [1] of the boys' deaths. Focusing our attention on the death of Carl, it is apparent that if the speed of defendant's truck was the sole cause of the accident, then Carl's negligence was not a proximate cause of his death. That is, plaintiff's theory that the accident was caused solely by the excessive speed of the truck would be an "inferential rebuttal" of defendant's contention that Carl's negligence was "a" proximate cause of the accident.

Our Courts have said that the issue of sole proximate cause arises only where it is claimed that the act of a third party is the sole cause of the event resulting in plaintiff's injury. Dallas Transit Co. v. Tolbert, 337 S.W.2d 617 (Tex.Civ.App.—San Antonio 1960, writ ref'd n. r. e.); Panhandle & S. F. Ry. v. Ray, 221 S.W.2d 936 (Tex.Civ.App.—Austin 1949, writ ref'd n. r. e.); International—Great Northern Ry. v. Acker, 128 S.W.2d 506, 521 (Tex.Civ.App.—Eastland 1939, writ dism'd jdgmt cor.). In distinguishing between the questions of independent intervening cause, unavoidable accident and sole proximate cause, our Supreme Court has said that where a defendant contends that "he is entitled to be absolved of liability because the event was caused by the negligence of a co-defendant or of a party to the event who is not a party to the suit, he may, and usually does, protect himself through plead-

---

1. It is difficult to understand the use of the term "proximate" in connection with the sole proximate cause issue. If A is the sole cause in fact of B, then it necessarily follows that no other conduct or event can be the cause of B. This conclusion is inescapable without reference to whether the sole cause in fact, A, was the sole "proximate" cause of B.

ings, proof and findings that the negligence of such person was the sole proximate cause of the event." Dallas Railway & Terminal Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379, 385 (1952).[2]

■ Since the practice of submitting the sole cause issue rests on dubious reasoning[3] and has been subjected to criticism which is not easily refuted,[4] the rule limiting use of the sole cause issue to situations where it is asserted that the conduct of someone other than the plaintiff or defendant was the sole cause of the accident is a salutary rule.[5] Cf. Missouri-Kansas-Texas Ry. Co. of Texas v. Cunningham, 118

Tex. 607, 23 S.W.2d 343, 353 (1930), where the Court, without discussing the problem, denied defendant's right to submission of an issue inquiring whether plaintiff's negligence was the sole proximate cause of the accident as an inferential rebuttal of plaintiff's discovered peril theory of liability.

The trial court did not err in refusing to submit plaintiff's requested issue relating to sole cause. It follows, as explained above, that the failure to submit an issue as to speed of the truck was harmless error.

■ The trial court properly allowed defendant to impeach three of plaintiff's witnesses by means of contradictory declara-

---

2. Despite the use of the word "negligence" by the Supreme Court in Bailey, it is not required that the conduct of the third person constitute negligence in order to raise the issue of sole cause.

3. It is settled law that a litigant is not entitled to submission of issues which are "opposites" of issues already submitted. 3 McDonald, Texas Civil Practice, Sec. 12.10, p. 1073 (1950). The submission of "inferential rebuttal" issues, such as the sole cause issue, is justified on the theory that they are the "converse" of issues already submitted. However, the converse of a proposition is obtained by transposing the subject and predicate of the original proposition (the convertend). Even if we use the word "converse" in its popular sense (in formal logic, the transposition of subject and predicate must be made in conformity with rules relating to quality and quantity), plaintiff's proposition, "The negligence of defendant was a proximate cause of plaintiff's injury," converts into "A proximate cause of plaintiff's injury was the negligence of the defendant." No known process of conversion will derive from plaintiff's proposition concerning proximate cause the defensive proposition, "The conduct of some person other than defendant was the sole cause of plaintiff's injury."

Since conversion, a form of immediate reasoning, is based on the fact that the converse is implicit in the convertend, if the convertend is true then the converse is necessarily true. But our whole practice of submitting "converse" issues is based on the assumption that the convertend (plaintiff's proposition) and the converse (defendant's proposition) cannot both be true. The misuse of the word "converse" cannot hide the fact that,

in submitting the sole cause issue, the court is submitting the "opposite" of plaintiff's proposition in the sense that when one proposition is true the other must be false. Stated differently, defendant's proposition is the "contradictory," rather than the "converse," of plaintiff's proposition.

4. Green, Proximate Cause in Texas Negligence Law, 28 Tex.L.Rev. 471, 484 (1950) ; Masterson, Preparation and Submission of Special Issues in Texas, 6 Sw. L.J. 163, 178 (1952) ; Stout, Our Special Issues System, 36 Tex.L.Rev. 44, 48 (1957).

5. It is realized that the logical underpinning for the practice of submitting the sole cause issue does not justify the rule that the issue arises only in connection with the conduct of a third party. If a finding that the conduct of A was the sole cause of an event precludes the existence of any other cause of such event, whether A, is a party to the suit or not is irrelevant.

Whatever the finding with respect to the sole cause issue, it cannot, standing alone, form the basis of a judgment. From the viewpoint of a defendant who requests submission of the issue, the jury's answer can, at best, create a conflict with the finding on the proximate cause issue submitted in connection with plaintiff's primary negligence cluster. Since the submission of issues which do no more than create the possibility of conflicting answers has little to recommend it, a rule refusing to create additional possibilities of conflicting answers reaches a desirable result, even if the adoption of such rule requires an abandonment of logic.

tions contained in written statements previously signed by the witnesses. While we agree that it was error to permit defendant, over plaintiff's objection, to introduce a portion of the prior inconsistent written statement of the witness Grona, since the witness had admitted making such prior inconsistent statements, plaintiff has not persuaded us that the error was prejudicial.

■ During his argument to the jury, counsel for defendant read to the jury portions of the written statements of the witnesses, Grona, Dinkla and Gentry. In reading from the Grona statement, counsel for defendant did not confine himself to the portion admitted into evidence. This, of course, was error, as was the action of counsel in reading from the Dinkla and Gentry statements which had not been introduced into evidence. However, all three of the witnesses had admitted making the statements, and the argument of defendant's counsel did not bring before the jury anything which they had not heard while the witnesses were on the stand. We do not believe the error is of a nature to require reversal. The same is true of the error of the trial court in allowing the highway patrolman who investigated the accident to testify concerning statements made by the witnesses at the scene of the accident. This was error, since the witnesses, while on the stand, had not been questioned concerning their conversations with the investigating officer. However, the prior inconsistent statements concerning which the officer testified were declarations which the witnesses had already admitted they had made in signed statements.

We also overrule plaintiff's point complaining of the fact that, during the course of his argument to the jury, defendant's counsel read from a report, not introduced in evidence, of one of the expert witnesses. In our opinion, the record does not satisfactorily establish that this occurred.

■ However, we believe that the finding that plaintiff had suffered no pecuniary loss as the result of Leon's death, except for funeral and medical expenses, is so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unfair and unjust.

At the time of his death on April 29, 1969, Leon, a high school student, was sixteen years of age. The evidence is undisputed that he worked in a grocery store after school and that he gave his mother money and, occasionally, took groceries home. Plaintiff testified that Leon temporarily had a paper route when he was fourteen, and that he resumed selling papers when he was fifteen. For several months prior to his death, Leon earned $15.00 a week working at the grocery store. Every week he gave his mother, according to her testimony, $3.00. Plaintiff testified that Leon had "made his own way in connection with money," since he was fourteen years old, and, in addition to contributing money and groceries, had paid for "his things in school." Plaintiff's sole income, apart from the financial aid which she received from Carl and Leon, consisted of $100.00 per month which she received from her former husband for the support of their children.

As already stated, the evidence concerning Leon's employment and contributions is undisputed. Although plaintiff's testimony is that of a party to the suit, it is direct, positive and uncontradicted, and the record discloses no circumstances tending to discredit it. It is true that it would be extremely difficult for defendant to produce evidence contradicting plaintiff's testimony as to the amount of money which Leon gave her every week, but certainly defendant could have produced testimony to the effect that Leon never worked, or that, at the time of his death, he was not working at the grocery store, or that he was an irresponsible lad with no concern for the well-being of his mother and younger brother and sister. When we consider that other witnesses testified that Leon was working and that he "pitched in and helped" the family, we must conclude that the jury's

finding cannot be allowed to stand. Cf. Nagelson v. Fair Park National Bank, 351 S.W.2d 925, 931 (Tex.Civ.App.—Dallas 1961, writ ref'd n. r. e.) and authorities there cited.

That portion of the judgment below denying plaintiff recovery for Carl's death is severed from the remainder of the judgment and is affirmed. The portion of the judgment concerning plaintiff's cause of action for the death of Leon is reversed and that aspect of the case is remanded for a new trial.

BARROW, C. J., and KLINGEMAN, J., concur in the result.