**Charles HAYS et ux., Appellants,**

**v.**

**Dr. R. W. HALL, Appellee.**

**No. 4459.**

Court of Civil Appeals of Texas, Eastland.

Feb. 18, 1972.

Rehearing Denied March 10, 1972.

DeVore, Bagby, McGahey, Ross & Burnett, Arlington, for appellants.

Bailey, Williams, Webber & Allums, Dallas, Hill, Paddock & McMaster, Ft. Worth, for appellee.

COLLINGS, Justice.

This suit was brought by Charles Hays and wife Willie Mae Hays against Dr. R. W. Hall a practicing doctor of Osteopathy. Plaintiffs alleged that the defendant had performed a surgical procedure known as a vasectomy upon the person of Charles Hays for the purpose of rendering him sterile; that Dr. Hall was guilty of negligence, breach of implied warranty and misrepresentation resulting in damage to plaintiffs. Plaintiffs further alleged that prior to the vasectomy here in question plaintiffs had given birth to two deformed children; that following the purported vasectomy and testing for sterility by defendant, his wife became pregnant and gave birth to a third child which was afflicted with deformities similar to those of the first two, and died as a result of such deformities at the age of nine months; that following the discovery of Mrs. Hays' pregnancy with the third child, the defendant tested the plaintiff husband and advised him that he was sterile; that following the birth of the third child, plaintiffs relying upon the representation of Dr. Hall, resumed sexual intercourse and the plaintiff wife again became pregnant and gave birth to the couple's fourth child, which, as of the time of the trial, was a well child.

Plaintiffs sought damages against the defendant for the actual medical, hospital, and funeral expenses arising from the illness and death of the third child, the medical and hospital expenses of the third and fourth pregnancies, the physical pain and suffering of plaintiff wife in the course of the two pregnancies, the loss of consortium by the plaintiff husband during the two pregnancies and during the illness of the third child, the mental anguish of plaintiffs during the third and fourth pregnancies and during the illness and death of the third child, and the monetary expenses for the raising, care, and education of the fourth child.

The district court sustained twenty-five of defendant's special exceptions to plaintiffs' pleadings. Upon refusal of the plaintiffs to amend, the court dismissed the case against the defendant. Plaintiffs have appealed.

The record, as set out in plaintiffs' pleadings, shows that prior to their first meeting with Dr. Hall, Mrs. Hays had given birth to two deformed children. Their first child was and is afflicted with birth defects known as spina bifida and meningocele. Their second child was afflicted with the same maladies and died as a result thereof. Dr. Hall on or about July 28, 1966, performed a vasectomy surgical operation on Mr. Hays. The doctor was at the time of this operation aware of the child bearing history of appellants and knew that the purpose of the operation was to prevent appellants from bearing further children, and especially to remove the possibility of the birth of further deformed children. After such operation Dr. Hall informed Mr. Hays that the operation was successful and that he was incapable of fathering another child. The doctor requested Hays to return in approximately one month for the purpose of further examination by the doctor to determine his sterility. Mr. Hays returned to the doctor approximately one month later and was examined and tested; the test being in the nature of a prostatic massage. After the test Hays was informed by the doctor that he had no live sperm in his semen and that he was sterile. Relying upon this information and opinion of the doctor appellants resumed sexual intercourse without fear of pregnancy.

Mrs. Hays was on September 27, 1967, examined by her own physician and it was de-

termined that she was pregnant. On or about January 11, 1968, appellants' third child was born. This third child suffered from the same malady as the first two, and after surgical treatment and hospitalization died on November 25, 1968. On September 28, 1967, following the discovery of his wife's pregnancy with the third child and prior to the birth of that child, Mr. Hays returned to the office of Dr. Hall and informed the doctor of his wife's pregnancy. The doctor again tested appellant husband and after such testing informed him that there were no live sperm in his semen, that he was sterile and could not cause his wife to become pregnant. Dr. Hall further advised Mr. Hays that the original vasectomy had been successful and that the pregnancy of his wife was probably caused by sperm cells having been trapped in the seminal tract above the vas deferens where the vasectomy incision was made, and that these sperm cells had caused the pregnancy. After this conference with the doctor and the representations made by the doctor, the appellant couple resumed sexual intercourse without fear of pregnancy after the birth of the third child. In July of 1968, Mrs. Hays was again informed by her physician that she was pregnant, and thereafter Mr. Hays returned to Dr. Hall who performed a third prostatic massage, and again advised Mr. Hays that he was incapable of producing children. Thereafter, on or about February 9, 1969, Mr. and Mrs. Hays' fourth child was born and as of the date of the trial this is a well child.

Appellants assert that they were required to expend medical and hospital expenses with regard to the pregnancy of the appellant wife with the third child, the birth of that child and its ensuing illness and to expend funeral expenses upon the death of such child; that they were required to expend medical and hospital expenses with regard to the pregnancy, delivery, and recuperation of the appellant wife with the fourth child; that during her pregnancies, deliveries, and recuperation with the third and fourth children the appellant wife experienced physical pain and suffering; that during these pregnancies, and during the illness and death of the third child the appellant husband suffered the loss of consortium with his wife; that upon the discovery of the pregnancy with their third child, the appellants experienced mental anguish which continued through the pregnancy and birth of the third child; that they suffered further mental anguish on the discovery of the deformed condition of the third child and throughout its ensuing illness, and upon and following the occasion of its death and funeral; that appellants experienced mental anguish upon the discovery of the fourth pregnancy which continued until said child was born; that since the birth of the fourth child they have expended and will be required to expend in the future considerable sums for the raising, education and care of said child, which, though loved, was unplanned.

It was agreed by the parties that the chronological summary of the dates here involved are as follows:

| | |
|---|---|
| July 28, 1966 | Vasectomy surgery performed by appellee upon appellant husband. |
| August 30, 1966 | First prostatic massage test performed by appellee. |
| September 27, 1967 | Appellants informed that appellant wife is pregnant with third child. |
| September 28, 1967 | Husband returns to the appellee physician; second prostatic massage test performed by appellee; alleged statements of concealment by appellee. |
| January 11, 1968 | Third child born with deformities. |
| July, 1968 | Appellant wife examined and informed of pregnancy with fourth child. |
| July, 1968 | Third prostatic massage test by appellee on appellant husband. |
| November 25, 1968 | Third child dies of maladies. |
| February 9, 1969 | Fourth child born (normal child). |
| May 16, 1969 | Suit filed. |

Malpractice cases, such as this, are governed by Article 5526, Vernon's Ann.Civ.St., of which the material portion is as follows:

"There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

.    .    .    .    .    .

6. Action for injury done to the person of another."

Appellants, in effect, concede the statement of law as above set out to be correct. It is undisputed that appellants learned of the pregnancy and the failure of the vasectomy in September of 1967, but did not file suit until more than two years later. Appellants contend, however, in their first point that the court erred in sustaining appellee's special exceptions finding that the statute of limitation had run as to appellants' cause of action. Appellants assert that appellee's pleas of limitation should be avoided because as asserted in their first point appellants have alleged that appellee physician, by his statements and conduct of September 28, 1967, fraudulently concealed the existence of appellants' cause of action, and assert that the rule of discovery applies to this case, and that the statute of limitation did not begin to run until appellants, by the exercise of ordinary care, should have discovered the existence of the cause of action. This point is overruled. In September of 1967, at the time of the alleged fraudulent concealment, appellants learned of the pregnancy and of the failure of the vasectomy, which was about a year before the expiration of the limitation period. Reasonable minds could not differ as to whether they were deceived at that time. Yet, they waited until May 16, 1969, to file their suit.

Most of the cases cited by appellants in support of their contention that the statute did not run deal with cases other than those of malpractice. Appellants cite Thompson v. Barnard, 142 S.W.2d 238 (Tex.Civ.App.1940) and Barnard v. Thompson, 138 Tex. 277, 158 S.W.2d 486 (Tex. Com.App.1942). They also cite Carrell v. Denton, 138 Tex. 145, 157 S.W.2d 878 (Tex. Com.App.1942) and Gaddis v. Smith, 417 S.W.2d 577 (Tex.Sup.Ct.1967). These cases are medical malpractice cases dealing with foreign objects. The Supreme Court of Texas set aside its opinion in Carrell v. Denton and also expressed disapproval of Stewart v. Janes, 393 S.W.2d 428 (Tex. Civ.App.1965, writ ref.; 383 U.S. 962, 86 S.Ct. 1233, 1372, 16 L.Ed.2d 304) another foreign object case. In the case of Coffman v. Hedrick, 437 S.W.2d 60 (Tex.Civ. App.1968, writ ref. N.R.E.) Judge Bell speaking for the Court said in part that:

"Our Supreme Court in Gaddis v. Smith, 417 S.W.2d 577, in a malpractice suit against a physician for having left a surgical sponge in a patient's body, held that the statute of limitation would not begin to run until the patient discovered the presence of the foreign object or in the exercise of reasonable care and diligence should have discovered its presence. In so holding the Court overruled the cases of Carrell et al. v. Denton, 138 Tex. 145, 157 S.W.2d 878 (Tex.Com.App.) Opinion adopted, and Stewart v. Janes, 393 S. W.2d 428 (Tex.Civ.App.) writ ref. These two cases also involved the leaving of a foreign object in the body. In overruling these cases and in adopting what is known as the 'discovery rule' the Court stated that it should be noted the holding made was limited to causes of action in which a physician leaves a foreign object in the body of his patient.

.    .    .    .    .    .

We hold that in a malpractice suit, other than one involving the leaving of a foreign object in the body, the cause of action arises as to each act of negligence when it is committed causing injury to the person, however slight the injury."

Appellants have proceeded in their briefs as if there were plead causes of action involving fraudulent concealment in connection with the first test made by ap-

pellee on August 30, 1966, approximately one month after the operation, and in connection with the second test made September 28, 1967, or approximately one year later. The rules concerning fraudulent concealment apply only when fraudulent concealment is plead, which in the instant case would apply only to the second test because there was no pleading of fraudulent concealment in connection with the first test. When it was known to appellants that the appellant wife had become pregnant approximately one year after the operation they then knew that the operation had not been a success and they could not have been deceived by anything that appellee may have told them thereafter. In view of their knowledge of the pregnancy appellants knew that the operation had been a failure. They could not have been deceived by a contrary representation by appellee, and therefore the negative of one of the essential elements of fraud is established as a matter of law. Appellants knew of the pregnancy at the time the alleged fraudulent representations were made and reasonable minds could not differ as to whether or not they were deceived. The court should have and did decide the question contrary to appellants as a matter of law. Where the record shows, as this does, that appellants will never be able to establish one required element of fraud, towit, that they were deceived, it was proper for the court to sustain special exceptions directed to a theory of recovery which the pleadings show will not be supportable.

■ Appellants have sought in their pleadings to recover for mental anguish suffered by them by reason of the pitiful condition of the third child. They argue that this is a contract case and not one for negligence. They refer back to their original brief where they point out that it is essential that the court view this case as a contract case and not as a negligence case because if it is a negligence case and not a contract case then they are not entitled to many of the items of damages they seek to recover. We cannot agree with this contention. In all malpractice suits the courts have treated such cases as negligence cases with the attendant problems of negligence and proximate cause. See 45 Tex. Jur.2d, Physicians and Other Healers, Sec. 135. Damages, pages 311 and 312, where it is stated that in an action for malpractice, the damages recoverable by a successful plaintiff are to be measured by the settled rules of recoveries in tort actions. Also see Thomas v. Beckering, 391 S.W.2d 771 (Tex. Civ.App.1965, writ ref. N.R.E.); Amerine v. Hunter, 335 S.W.2d 643 (Tex.Civ.App. 1960, writ ref. N.R.E.). In Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779 (1949), the Supreme Court sets forth the malpractice rule in Texas to be that a patient has no cause of action against his doctor for malpractice unless he shows that the diagnosis or treatment complained of was such as to constitute negligence and that such negligence was a proximate cause of the patient's injuries.

■ Appellants also urge a point of error in which it is contended that the court erred in sustaining appellee's special exception to the recovery by appellants' damages for the economic cost of raising, care, and education of the fourth child. This point is overruled. To allow damages for the birth and upbringing of a normal child would mean that the doctor would have to pay for the satisfaction and joy and affection which normal parents would ordinarily have in the rearing and education of a healthy child. Such a holding would not be justified by the facts of this case.

Appellants' points are all overruled and the judgment of the trial court is affirmed.