Ardelia **TERRELL** et vir, Appellants,

v.

**Raul G. GARCIA, M.D.,** Appellee.

No. 15174.

Court of Civil Appeals of Texas, San Antonio.

May 9, 1973.

Rehearing Denied June 13, 1973.

———◆———

Phillip D. Hardberger, San Antonio, for appellants.

Paul M. Green, Lang, Cross, Ladon, Boldrick & Green, San Antonio, for appellee.

BARROW, Chief Justice.

The sole question presented by this appeal from a take-nothing summary judgment is whether the parents of an unwanted, but normal, healthy child conceived after an unsuccessful sterilization operation on the mother, may recover from the negligent doctor for the financial expenses of the care and maintenance of said child. All other items of damage, such as the medical expenses, as well as the pain and mental anguish of the mother incident to the birth of said child, were waived by appellants to deliberately narrow the issue before the Court.

It was alleged that in November, 1970, Mrs. Terrell entered the Robert B. Green Hospital for the dual purpose of delivery of the couple's third child, and for the performance of a bilateral tubal ligation to insure her future sterility. Mrs. Terrell was assured that such operation, which was performed by Dr. Garcia, would prevent her from ever having children in the future. Nevertheless, she subsequently became pregnant and on January 17, 1972, a normal, healthy son was born and is living with Mrs. Terrell, who is now separated from her husband. It is alleged that the fourth child, in addition to the other three children imposes a heavy financial strain upon the couple, and that she sought the sterilization operation to avoid such strain.

The uniformly recognized rule prior to 1967 was that irrespective of the issue of liability for performance of an unsuccessful sterilization operation, no damages resulted from the birth of a normal child through normal delivery with no permanent harm to the mother on the grounds that the birth of a normal child could not be considered an injury to the parents thereof; and that in any event, the granting of damages on such grounds would be against public policy. 27 A.L.R.3d 906, 917 (1969); Christensen v. Thornby, 192 Minn. 123, 255 N.W. 620, 93 A.L.R. 570 (1934); Shaheen v. Knight, 11 Pa.D. & C.2d 41 (1957); Ball v. Mudge, 64 Wash.2d 247, 391 P.2d 201 (1964); Gleitman v. Cosgrove, 49 N.J. 22, 227 A.2d 689, 22 A.L.R. 3d 1411 (1967).

This rule was followed in the only Texas case on this point. In Hays v. Hall, 477 S.W.2d 402, 406 (Tex.Civ.App.—Eastland 1972), the Court, after sustaining a plea of limitations, expressly overruled appellant's point complaining of the trial court's action in sustaining a special exception to plaintiff's allegation seeking recovery for the economic cost of raising, caring for, and educating the unwanted child. The Court said: "To allow damages for the birth and upbringing of a normal child

would mean that the doctor would have to pay for the satisfaction and joy and affection which normal parents would ordinarily have in the rearing and education of a healthy child. Such a holding would not be justified by the facts of this case." The Supreme Court granted a writ of error in this case and reversed and remanded the case for trial after extending the "discovery rule" to malpractice cases arising from vasectomy operations. 488 S.W.2d 412 (Tex.1973). The Supreme Court discussed only the limitations question and did not consider any of the elements of damages.[1]

The soundness of this rule was first questioned in Custodio v. Bauer, 251 Cal. App.2d 303, 59 Cal.Rptr. 463, 27 A.L.R.3d 884 (1967). Plaintiffs sought to recover damages following an unsuccessful sterilization operation for the medical expenses of said operation, physical pain and mental anguish incident to the pregnancy, and for economic loss caused by the unwanted child. The Court rejected the reasoning of the *Christensen* and *Shaheen* holdings and said: "Where the mother survives without casualty there is still some loss. She must spread her society, comfort, care, protection and support over a larger group. If this change in the family status can be measured economically, it should be as compensable as the former losses." On rehearing, the Court made it clear that it had not as yet held that economic loss alone was recoverable. It said: "We adhere to our determination that resolution of the controversy over one element of the damages allegedly recoverable for that wrong should await proof of the breach of duty and at least an offer to prove the alleged damages. The complaint was filed prior to delivery of any child, and supports proof of the existence of actual and potential damages aside from the care and support of a normal child."

Nevertheless, the reasoning set forth in the original opinion in *Custodio* regarding the economic loss to the parents of an unwanted, normal child has been cited with approval by at least two other courts,[2] although no reported case has ever approved a recovery for this type of loss. In Jackson v. Anderson, 230 So.2d 503 (Dist. Court of Appeal of Florida 1970), the Court reversed an order of dismissal and remanded for trial a complaint seeking damages for breach of warranty and negligent performance of a sterilization operation on the mother following a difficult delivery of her third child. The Court did not discuss the items of damage sought by the complaint, but held that such a suit seeking damages following normal birth of a healthy child was not against public policy.

Troppi v. Scarf, 31 Mich.App. 240, 187 N.W.2d 511 (1971), was an appeal from the dismissal of a complaint brought against a pharmacist by the parents of a normal, healthy child which was conceived after the pharmacist supplied the mother with tranquilizers in lieu of birth control pills. Damages were sought for several items of damage: (1) mother's lost wages; (2) medical and hospital expenses; (3) pain and mental anguish of the mother incident to the birth; and (4) economic costs of rearing such unwanted child. The Court, after a full review of the authorities, held that there is no valid reason why the trier of fact should not be free to assess damages as it would in any other negligence case. The Court rejected the argument that this type of suit was against public policy in view of the recent recogni-

---

1. Damages were there sought for actual medical and hospital expenses of a deformed child, which died at nine months of age, and for the medical expenses and pain of the mother in giving birth to a subsequently normal child, as well as the economic cost of rearing said normal child.

2. A trial court in Delaware made a similar holding; however, the Supreme Court of Delaware expressly set aside such opinion. Coleman v. Garrison, 281 A.2d 616 (1971).

tion of the use of contraceptives by the legislature of Michigan, and the United States Supreme Court,[3] as well as the public recognition of family planning.

The Michigan Court recognized it is arguable that the birth of a healthy child confers so substantial a benefit as to outweigh the expenses of his birth and support, and that this is undoubtedly true in the great majority of the cases. After rejecting such thesis as a matter of law, the Court adopted the so-called "benefits rule" from Restatement, Torts, (1939), Section 920, p. 616, as follows: "Where the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred upon the plaintiff a special benefit to the interest which was harmed, the value of the benefit conferred is considered in mitigation of damages, where this is equitable." It was held that the benefits of the unplanned child may be weighed against all elements of claimed damage, including the medical expenses incident to the birth. Accordingly, the Court reversed the order dismissing the complaint and remanded the case for trial on the merits.

We assume for the purpose of this appeal from the take-nothing summary judgment that the sterilization operation was negligently performed by the doctor. Thus, our question relates entirely to compensation for such negligence. We do not have the question which was presented in the *Custodio, Jackson* and *Troppi* cases of whether the birth of a normal, healthy child can be considered a compensable injury under any theory of law, or whether the negligent doctor is absolved from all liability. Rather, the narrow question presented by appellants here is whether the parents of an unwanted child may recover *only* for the economic loss in rearing and educating such child. The appellant, Mrs. Terrell, has chosen to waive other elements of damage such as medical expenses, as well as her pain and suffering.

The universal rule prior to the *Custodio* holding was that public sentiment precluded recovery for such alleged damage, because the expense of rearing the child was offset by the parental joy and companionship brought by such experience. Such public policy was undoubtedly based more on recognition of the family's importance to our society than on the moral question of family planning. This public policy view was the basis for the general rule followed in Hays v. Hall, supra, and since it was not disapproved or set aside by the Supreme Court opinion, it remains as the "law of the case." Kitchens v. Kitchens, 387 S.W.2d 89 (Tex.Civ.App.—San Antonio 1965, writ ref'd n. r. e.); Western Union Telegraph Co. v. Hicks, 47 S.W.2d 466, 473 (Tex.Civ.App.—Austin 1932, writ ref'd). Since this is the only Texas authority on the point, it is at least persuasive that such rule be followed here.

Irrespective of the public policy view, adoption of the "benefits rule" as suggested by *Troppi,* would present insurmountable problems of proof under our present standards for proof of damages. Proof could undoubtedly be offered regarding the cost of care and maintenance for a hypothetical child, although the standard of living and extent of education to be provided such child would undoubtedly require considerable conjecture and speculation by the trier of facts. Nevertheless, Texas juries and courts now determine somewhat similar costs, as well as the probable earnings of such child during minority, in actions to recover for the wrongful death of a child. It is seen that in such actions Texas courts virtually hold as a matter of law that the probable earnings of a normal child during his minority will more than offset the parents' expense of rearing him. See Smith v. Red Arrow Freight Lines, Inc., 460 S.W.2d 257 (Tex.Civ.App.—San Antonio 1970, writ ref'd n. r. e.); Ferguson, Death of a Minor Child, 4 St. Mary's Law Journal 157 (1972). This result is reached although the Texas courts expressly do not

3. Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

allow consideration for the loss of companionship.

Despite such holdings, a strong case can be made that, at least in an urban society, the rearing of a child would not be a profitable undertaking if considered from the economics alone. Nevertheless, as recognized in *Hays* and *Troppi*, the satisfaction, joy and companionship which normal parents have in rearing a child make such economic loss worthwhile. These intangible benefits, while impossible to value in dollars and cents are undoubtedly the things that make life worthwhile. Who can place a price tag on a child's smile or the parental pride in a child's achievement? Even if we consider only the economic point of view, a child is some security for the parents' old age. Rather than attempt to value these intangible benefits, our courts have simply determined that public sentiment recognizes that these benefits to the parents outweigh their economic loss in rearing and educating a healthy, normal child. We see no compelling reason to change such rule at this time.

The judgment is affirmed.

CADENA, Justice (dissenting).

I see no reason for holding that a person whose negligent conduct produces a result which he must have foreseen is not liable for the consequences of his negligent act. The majority opinion bases this absolution of the negligent actor on social policy and the difficulty which the victim would encounter in attempting to prove the extent of his damages.

Recent decisions of the United States Supreme Court, however much these decisions may be condemned as being based on unacceptable moral standards, establish the legal right of persons to resort to procedures which will prevent conception and, within certain limits, to terminate an existing pregnancy. Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739,

35 L.Ed.2d 201 (1973); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L. Ed.2d 510 (1965). In *Wade*, Justice Douglas, concurring, speaks of the ". . . freedom of choice in the basic decisions of one's life respecting . . . procreation . . . ." 410 U.S. at 211, 93 S.Ct. at 757, 35 L.Ed.2d at 187. It is, therefore, impermissible to say that social policy requires that a husband and wife be denied the right to limit the number of children which they will bring into the world, or that a person shall be allowed, by his negligent conduct, to frustrate the realization of the married couple's aim to limit the size of their family.

Apparently, the social policy which is relied on as supporting the denial of recovery in this case is the notion that, as stated in the opinion of the Eastland Court of Civil Appeals in Hays v. Hall, 477 S.W.2d 402, 406 (Tex.Civ.App.1972, rev'd 488 S. W.2d 412 [Tex.1973]), that it would be undesirable ". . . to allow damages for the birth and upbringing of a normal child . . . ." since that would ". . . mean that the doctor would have to pay for the satisfaction and joy and affection which normal parents would ordinarily have in the rearing and education of a healthy child."

Neither the majority opinion in this case nor the opinion of the Eastland Court in *Hays* attempts to articulate the social policy which is being furthered by assuring doctors that they may, without fear of incurring liability, negligently perform sterilization operations. Such a rule does nothing to increase the importance of the family unit in our society.

There remains the argument that plaintiffs in this case would experience great difficulty in proving the amount of damages to which they would be entitled. This argument is expressed in the majority opinion in the form of the question, "Who can place a price tag on a child's smile . . . ?"

It may be assumed that the "benefits rule" [1] is applicable to a case where a bungling physician has forced on unwilling parents the additional economic burden of raising a child which they did not want and would not have had if the physician had acted with reasonable care.

It may, indeed, be difficult to "place a price tag on a child's smile." But there is no support for the conclusion that the task cannot be performed. The courts of other states have undertaken the difficult task of assigning a value on a child's smile in cases involving the wrongful killing of children, and have awarded the bereaved parents damages for the loss of companionship and comfort. Wardlow v. City of Keokuk, 190 N.W.2d 439 (Iowa 1971); Lockhart v. Besel, 71 Wash.2d 112, 426 P.2d 605 (1967); Fussner v. Andert, 261 Minn. 347, 113 N.W.2d 355 (1962); Prosser, Torts, Section 121, p. 930 (3d ed. 1964). I have no reason to believe that the Texas courts are less competent. Nor do the Texas courts feel they are incapable of solving the problem. In alienation of affection suits our courts have awarded the injured spouse damages for "loss of consortium," which includes the loss of "affection, society, comforts and assistance of" the spouse whose affections have been alienated. Smith v. Smith, 225 S.W.2d 1001, 1006 (Tex.Civ.App.—Amarillo 1950, no writ); 30 Tex.Jur.2d, Husband and Wife, Sections 3, 153. It is not unreasonable to assume that, in placing a "price tag" on companionship and affection, it is necessary to consider the value of a "smile." The difficulties are the same, whether the "smile" which is being evaluated is that of a spouse or a child.

In any event, the fact that the extent of damages may be difficult to ascertain should not cause the courts to throw up their hands in frustration. Even the dice player who is faced with the admittedly difficult task of rolling a "10" is afforded the opportunity to roll the dice. If he fails, he loses, but the dice are not snatched from his hand with the explanation that the "point" is too difficult to make.

Finally, factors which result in the mitigation of damages do not have the effect of vitiating the cause of action.

The majority's reliance on Hays v. Hall, supra, is, I believe, misplaced. In the first place, the opinion of the Eastland Court of Civil Appeals begs the question by assuming that a man and woman who want no children will derive joy and satisfaction, that is, they will receive a "benefit," by having the obligation of raising a child thrust upon them as a result of a doctor's negligence. The Eastland Court also misstated the question before it. The question is not whether a doctor should be forced "to pay for the satisfaction and joy and affection which normal parents would ordinarily have in the rearing and education of a healthy child." The question is whether a negligent doctor should be held responsible for the consequences of his negligence. There is no basis for the assumption that plaintiffs here will derive any joy and satisfaction from the raising of the unwanted child. The mere indulging of this assumption, in support of the rendition of a summary judgment, does violence to the rules ordinarily applicable in summary judgment cases. Perhaps these parents, in deciding that they did not want to pay the price for the enjoyment and pleasures which "normal" parents would derive from the birth of an unwanted child, were not acting as "normal" persons.

---

1. The "benefits rule," according to 4 Restatement, Torts, Section 920 (1939), is applicable where ". . . the defendant's tortious conduct has caused harm to the plaintiff . . . and in so doing has conferred upon the plaintiff a special benefit to the interest . . . ." invaded by defendant's wrongful act. It might be asked whether a person's interest in having no more children receives a benefit from a doctor's negligence which results in the birth of an unwanted child. See 4 Restatement, Torts, Section 920, comment b (1939).

But it is hornbook law that a tort feasor must take his victim as he finds him and has no right to insist on a "normal" victim.

Further, the conclusion of the Court of Civil Appeals in *Hays* is merely that the award of damages measured by the cost of raising a child ". . . would not be justified by the facts of . . ." that case. 477 S.W.2d at 406. The Supreme Court, in reversing the judgment of the Court of Civil Appeals, tells us what the "facts" of that case are. According to the Supreme Court, the "facts" in that case were that the purpose of the sterilization operation was ". . . to avoid the possibility of the birth of other deformed children . . . ." Hays v. Hall, 488 S.W.2d 412, 413 (Tex.1973). The "facts" in the case before us are that the purpose of the sterilization operation was to avoid the possibility of the birth of *any* children. This not insignificant difference in the purpose of the operation in *Hays* and the operation here, perhaps, explains the Eastland Court's statement concerning the joy and satisfaction derived from raising a "healthy" child by parents who sought only to avoid the birth of a deformed child.

It should not be overlooked that, however persuasive may be the reasoning of the Eastland Court in support of its judgment in *Hays*, that judgment was reversed by the Supreme Court of Texas. It is true that the Supreme Court did no more than hold that the Eastland Court had erred in holding that the plaintiffs' cause of action, which included a cause of action for damages measured by the cost of raising a healthy child, was barred by limitations. But the reversal of the judgment of the Court of Civil Appeals was unqualified, and the Supreme Court remanded the case to the trial court for trial on the merits. The plaintiffs in *Hays* were seeking recovery not only for the mental pain and anguish borne by the mother in giving birth, and the cost of the pregnancy and delivery, but also for the cost of raising the child. It was this entire cause of action, and not merely a portion of it, which was remanded to the trial court for a hearing on the merits. There is nothing in the opinion of the Supreme Court which indicates an approval of any part of the holding by the Court of Civil Appeals.

The opinion of the Court of Civil Appeals in *Hays,* then, carries no impressive precedential weight. It is open to question whether that reversed opinion deserves the designation "law of the case." The opinions accorded the accolade, "law of the case" in Kitchens v. Kitchens, 387 S.W.2d 89 (Tex.Civ.App.—San Antonio 1965, writ ref'd n.r.e.), and Western Union Telegraph Co. v. Hicks, 47 S.W.2d 466 (Tex.Civ.App. —Austin 1932, writ ref'd), have one characteristic which the opinion of the Court of Civil Appeals in *Hays* lacks. In neither *Kitchens* nor *Hicks* was the opinion of the Court of Civil Appeals reversed by the Supreme Court.

Even if the opinion of the Court of Civil Appeals in *Hays* be regarded as the law of *that* case, it is not the law of *this* case. The portion of the *Hays* opinion relied on by the majority is persuasive only to the extent that the reasoning on which it is based is persuasive. The opinion does not disclose the reasoning on which it is based. If, indeed, the satisfaction which normal parents derive from raising a child outweighs, as a matter of law, the considerable expense of raising a child, it would follow that such joy and satisfaction would outweigh the relatively insignificant medical costs of the pregnancy and delivery. "Normal" mothers are willing to undergo the physical pain and mental anguish, if any, of giving birth, and "normal" parents are willing to pay all medical expenses incident to the birth of a child. There is no discernible reason for allowing recovery for these relatively minor "damages" and denying recovery for the substantial costs of raising and educating a child. The reasoning by which the Eastland Court arrived at the conclusion that the benefits derived by parents from the birth of a child outweigh the heavy costs of raising the child, but do not outweigh the burden of paying the

medical expenses incident to such birth is not revealed by the Eastland Court's opinion.

I see no reason for departing from the rule that a negligent person is liable for the foreseeable consequences of his negligence. There is no justification for holding, as a matter of law, that the birth of an "unwanted" child is a "blessing." The birth of such a child may be a catastrophe not only for the parents and the child itself, but also for previously born siblings. The doctor whose negligence brings about such an undesired birth should not be allowed to say, "I did you a favor," secure in the knowledge that the courts will give to this claim the effect of an irrebuttable presumption.